KIRKBY'S HEIRS *vs.* FOGLEMAN.

APPEAL FROM THE COURT OF THE SIXTH DISTRICT, FOR THE PARISH OF AVOYELLES, THE JUDGE OF THE SEVENTH DISTRICT PRESIDING.

The penalty for failing to pay the different instalments to the United States, for the purchase and entry of lands under the credit system, was absolute forfeiture, and the reversion of the land to government.

According to the act of congress, passed the 2d March, 1821, after the change from the *credit* to the *cash* system, which extended the credit on lands already purchased but not paid for, or allowed a discount to those preferring to pay in cash, the penalty for failing to comply with these requisitions, was absolute forfeiture and reversion to the government.

The entry and purchase of lands, under the act of the 4th July, 1827, previously forfeited, divested the United States of all title which had been acquired by the previous forfeitures and reversions.

The registers and receivers being authorized by the laws of congress, to carry into effect the various laws allowing pre-emption rights, and also to make sale of the public lands, this court is bound to give effect to the titles they confer, unless the adverse party produces a better.

So, where the register and receiver's certificate granted a pre-emption right to the plaintiff's ancestor, *as assignee*, on payment of the price, and there is no evidence of the assignment but this certificate : *Held*, that they must recover the land, as against the defendant who claims under a prior entry, but his title was forfeited to the United States.

This is a petitory action, to recover two quarter sections of land, containing three hundred and six acres, more or less, which the plaintiffs allege their ancestor, John Kirkby, purchased or acquired right thereto, from one Henry Slaughter, but that the defendant has taken possession of the greater part of the same, and continues to hold it and claims to be the owner thereof. They pray that they be restored to the possession and quieted in their title to all of said land.

The defendant denied that the plaintiffs had any title to the land in question ; and averred that he was the true owner, especially to one of the quarter sections ; that he purchased from one J. Phillips, who resides in Kentucky, and whom he prays may be called in warranty, and a *curator ad*

WESTERN DIST.  *hoc* appointed to represent him, which was ordered, and one
October, 1840.  appointed accordingly.   The *curator ad hoc* never acted, and
KIRKBY'S HEIRS  shortly after died, and Phillips was never notified of his lia-
*vs.*  bility in warranty.   Upon these issues the parties went to
FOGLEMAN.  trial before the court.

The evidence of title, of the respective parties, consisted
of proceedings in the land office, in making purchases under
the different laws of congress, and of the register and re-
ceiver's certificates, &c.

The plaintiffs produced the certificate of the register of the
land office at Opelousas, dated the 2d day of July, 1827,
stating that the two quarter sections of land claimed by them
*as assignees of Henry Slaughter*, had been fully paid for, and
that according to the act of congress, passed the 4th May,
1826, they were entitled to a patent from the government,
on the presentation of this certificate.

The defendant claimed one hundred and fifty-one acres of
the plaintiffs' land, in virtue of a pre-emption right in favor
of one William M'Kee, which was subsequently transferred
by several conveyances to him.   It was entered the 20th
November, 1818, and eighty dollars paid, under the credit
system, at \$2 per acre, which left two hundred and twenty-
two dollars.   There was no further payment, until July, 1829,
eleven years afterwards, and two years after the plaintiffs
obtained their final certificate, covering the same land.

The plaintiffs insist the defendant's right and the partial
payment of eighty dollars in 1818, were entirely forfeited by
the several acts of congress extending relief to the purcha-
sers of public lands.   These various acts are fully set out in
the opinion of the court.

The cause was submitted to the court below.   There was
judgment for the defendant, and that the plaintiffs take noth-
ing by their suit.   They appealed.

*Cushman* argued the case on behalf of the claimants and
appellants.   He insisted that the register's certificate was
full proof of the assignment from Slaughter to Kirkby, and
relied on the case of *Boatner* vs. *Ventres*, 8 *Martin, N. S.*,
644, 650.

2. All the title the defendant ever had, was forfeited for not complying with the land laws; and especially the act of 2d March, 1821, extending relief to purchasers of public lands.

*Brent*, for the defendant, submitted the case to the court.

*Garland, J.*, delivered the opinion of the court.

A rehearing having been granted in this case, it has been examined most carefully, and it appears one or two important facts, from not being presented in argument originally, or some other cause, escaped attention. They make a material change in the opinion of the court. The plaintiffs claim the land by purchase directly from the United States, and the claim of the defendant is of the same character, if any he has. In his defence, he insisted upon going back to what is alleged to be the inception of the titles of both parties, and in doing so, the court has fallen into the error which is sought to be corrected. On the 20th November, 1818, John M'Kee claimed the land in controversy, under the preemption law of the 12th April, 1814, and, it is alleged, made proof of his right and entered it, paying eighty dollars on account, and availing himself of the credit then allowed in sales of the public land. The defendant alleges that M'Kee sold his rights to James Bowie, on the 12th February, 1819. Jenkins Phillips sold the land to the defendant, by notarial act, on the 10th November, 1830, although he does not appear to have purchased from Bowie, until May 2d, 1834.

The plaintiffs say, Henry Slaughter was entitled to a preemption right on the land, under the same law, and on the 21st November, 1818, established his right, paid eighty dollars on account of the price, and availed himself of the credit allowed by law for the remainder. The penalty for failing to pay the different instalments to the United States, was a forfeiture of title to the land sold.

The penalty for failing to pay the different enstalments to the United States, for the purchase and entry of lands under the credit system, was absolute forfeiture, and the reversion of the land to government.

In April, 1820, the system of credit sales was abandoned, and for the purpose of collecting the debts then owing to the government for lands previously sold, congress passed an act, on the 2d March, 1821, allowing to all purchasers previous

WESTERN DIST.
October, 1840.

KIRKBY'S HEIRS
vs.
FOGLEMAN.

to the 1st July, 1820, different periods of credit for the amount still owing, or a discount of thirty-seven and a half per cent. to all such as should prefer to pay in cash. The penalty for neglecting or refusing to comply with the provisions of this act, on or before the 30th September, 1821, was an absolute forfeiture of all title, the land reverted to the United States, and was subject to be sold as prescribed by the act of April 24th, 1820, *Land Laws, vol.* 1, *p.* 787, 788, 789.

Neither M'Kee or Slaughter, or any person claiming under them, appear to have availed themselves of the provisions of this act, and the title to the land was forfeited. By subsequent acts, the provisions of the act of March 2d, 1821, were received and extended to different periods, and the penalty in each act, was a forfeiture of all title ; *Land Laws, vol.* 1, *p.* 804, 849, 859. None of the parties took the benefit of any of these acts. So that each had forfeited their titles four times, and the land belonged to the United States. On the 4th May, 1826, congress passed an act revising the act of March 2d, 1821, and extending its provisions to all persons who should avail themselves of it and the suplementary acts, on or before the 4th July, 1827. On the 2d July 1827, the plaintiffs presented themselves to the land officers at Opelousas, alleging they were the legal holders of the certificate to Slaughter, and claimed the benefit of the act, which was accorded. What evidence they offered at the land office to establish the assignment from Slaughter to Kirkby, is not shown, but they were recognized as his assignees, paid the full amount required by law, and obtained a final certificate in their own names, in which they are stated to be the assignees of Slaughter ; that they paid the price, and further, that on the presentation of said certificate, to "the general land office, the said heirs of J. Kirkby, or their legal representatives, shall be entitled to a patent for the land described." This proceeding divested the United States of all title which had been acquired by the previous forfeitures and reversions, and gave plaintiffs a title to the land ; *Land Laws, vol.* 1, *p.* 904. Neither M'Kee or any one claiming under him, availed themselves of this act, so there was a fifth forfeiture of their title.

According to the act of congress passed the 2d March, 1821, after the change from the *credit* to the *cash* system, which extended the credit on lands already purchased but not paid for, or *allowed a discount* to those preferring to pay in cash; the penalty for failing to comply with these requisitions was absolute forfeiture and reversion to the government.

The entry and purchase of lands under the act of 4th January 1826, previously forfeited, divested the U. States of all title which had been acquired by the previous forfeitures and reversions.

On the 21st March, 1828, congress again revived the act of March 2d, 1821, and extended its provisions to the 4th of July, 1829, and on the day before the expiration of the act, Phillips, claiming to be the assignee of M'Kee, came forward to avail himself of its provisions. An account is stated which shows the original price of the land, the payment of the eighty dollars in 1818, and the balance due after deducting the discount, and credit is given for it as being paid to the receiver; but the defendant produces no receipt from him, or any patent certificate from the register, and from an examination of the whole record, we are induced to believe none was given. It is more than probable, that the statement was made for the purpose of adjusting the claim, and that it was then found the land had been previously sold, and the account therefore left in the office, from which a copy has been taken, as it now appears in the record, or it may be, it was stated, for the purpose of obtaining the benefit of another act of congress of the 23d May, 1828, which authorized scrip to be given to such purchasers of land, for the money paid on account, when they had not availed themselves of the provisions of the act of March 2d, 1821, and the acts supplementary thereto, or were prevented from taking such benefit, by the land being sold after the forfeiture and reversion for non-payment; *Land Laws, vol. 2, p. 212, 222.*

When Phillips applied to pay for the land, he was not the assignee of M'Kee, as the latter had sold to Bowie in 1819, and there was no transfer from him to Phillips, until May 2d, 1834, and this suit had been commenced more than eighteen months previous.

The registers and receivers are the persons authorized by congress to carry these various laws into effect, and having sold the land in controversy to the plaintiffs, we are bound to give effect to their title, it appearing the defendant has no title by which he can hold the property. 4 *Lousiana Reports,* 547; 6 *Louisana Reports,* 10.

The judgment in the court below having been in favor of the defendant, it will be necessary to remand the case, to

*The registers and receivers being authorized by the laws of congress, to carry into effect the various laws allowing pre-emption rights, and also, to make sale of the public lands, this court is bound to give effect to the titles they confer, unless the adverse party produces a better.*

So, where the register and receiver's certificate, granted a pre-emption right to the plaintiff's ancestor, as assignee, on payment of the price, and there is no evidence of the assignment, but this certificate: *Held*, that they must recover the land, as against the defendant who claims under a prior entry, but his title was forfeited to the U. States.

give the defendant an opportunity of proceeding against his warrantor, and also to settle any questions that may arise in relation to damages and improvements made upon the land in controversy.

It is, therefore, ordered and adjudged, that the judgment of the District Court be annulled, avoided and reversed; and this court proceeding to give such judgment as, in their opinion, ought to have been given in the court below, do further order and decree, that the plaintiff do have judgment against and recover of the defendant the land in controversy, being the south-west quarter of section number six, in township number two south, range number three east, containing about one hundred and fifty-one acres, and they be quieted in their title. And it is further ordered, that this case be remanded to the inferior court, to be proceeded in according to law between the defendant and his warrantor, and also between the plaintiff and defendant, in relation to rents, fruits, improvements and damages; the appellee paying the costs in this court and those in the court below, up to the rendition of this judgment; those hereafter accruing, to be fixed by the judgment that may hereafter be rendered.