BENJAMIN WILLIAMS and others, Heirs of Joseph H. Williams, deceased, v. NAPOLEON BONAPARTE RIDDLE.

To recover, in a petitiory action, against a party in possession claiming title, the plaintiff must not only show a better title than the defendant's, but a title as good as any which the latter can oppose to him, whether vested in the defendant or not. But the outstanding title in such third person must be a legal, subsisting, and better title than the plaintiff's; and, in fairness, should be set forth in the answer, that the plaintiff may have notice thereof.

APPEAL from the District Court of West Feliciana, *Butler*, J.

GARLAND, J. The plaintiffs assert that they are the owners and legal proprietors of a tract of land containing two hundred and seventy-five *arpents*, lying on the east fork of Grant's bayou, about half a league west of Thompson's creek, with certain boundaries as mentioned in a plat of survey made by Ira C. Kneeland in the year 1810. They claim it by virtue of several conveyances, as a part of a tract of one thousand superficial *arpents* granted and patented to Don Pedro Robin Delogny, by Governor M. Gayoso, on the 16th day of January, in the year 1799. On the 14th of November, 1820, Delogny, by his agent Labarte, sold to Samuel S. Crocker and Isaac Johnson, all that remained of a tract of land which he had in the parish of Feliciana, bounded in part by the Mississippi river and Thompson's creek, which contained, after deducting about one hundred and sixty superficial *arpents*, previously sold to others, about three thousand one hundred and sixteen superficial *arpents;* the portion sold being divided into two lots, represented on a plat annexed to the sale by the letters A and B, and a red line en-

closing the whole. A portion of the tract of one thousand *arpents*, granted as aforesaid, is included within the red lines on the plat A, and all that part of it claimed by the plaintiff. No boundaries are specified in the sale, but on the plat they are plainly represented; and on the east, the land claimed is represented as bounded by the claim of Felix Bernard, under whom the defendant holds. On the 10th day of January, 1823, Crocker, by an authentic act, sold to his co-proprietor Johnson, his "joint and undivided half of all the land, purchased by said Crocker and Johnson from P. R. Delogny, now remaining unsold, and by them held as joint property." There is not in this act any specification or statement of boundaries, or quantity sold previously, or then sold. At a probate sale of the property of Isaac Johnson, made in December, 1824, Joseph H. Williams, under whom the plaintiffs claim as heirs, became the purchaser of " one tract of land containing two hundred and seventy-five *arpents*, more or less, being lot No.14." This is the only description of the land in the *procès-verbal*, and no other act is shown that gives a further description of it.

The defendant answers by a general denial, and an allegation that he purchased the land at the probate sale of James P. Hearsey, with a general warranty of title. He prayed that the widow and heirs of Hearsey might be cited; and he further pleaded the prescription of ten years. The legal representative of Hearsey's heirs, after a general denial of any personal responsibility, having accepted the succession with the benefit of inventory, and the widow having renounced the community, further say, that the land claimed by the plaintiffs does not comprise any portion of that sold to Riddle at the sale of the deceased, and that he has not been disturbed in the possession or enjoyment of that which he really purchased.

Although neither the defendant nor his warrantors, in their answers, set up any particular title in themselves, they were permitted, without objection on that ground, to offer evidence of one, and first offered a certified copy from a book filed and deposited in the office of the Register of the Land-Office in New Orleans, entitled, " Registro de los primeros decretos de concessiones de tierra"—Register of the first decrees or orders of con-

cessions of land—from which it appears, that, on the 15th of December, 1786, a concession of eight *arpents* front of land, with the ordinary depth, was, made to Felix Bernard, on the bayou New Feliciana, about one league from the river, bounded by the lands of Edmund Piper and Lewis Alston. This claim was surveyed and located, in 1787, by Carlos Trudeau, surveyor of the province, with its front on the river Feliciana, commonly known, at that time, as the "*Bayou de los Ecores*," and now as Thompson's creek, and the rear line at the extremity of the lands fronting on the river Mississippi. The boundaries are fixed, the proprietors above and below named, the length and courses of the lines stated, and the superficial quantity of 236 2-5 *arpents* mentioned; and on the 18th of June, 1787, a patent in form was given by Governor Miro, conforming in every respect to the survey. On the 28th day of July, 1812, Zachariah Smith, of Wilkinson county, Mississippi, by an act under private signature sold to Adolphus Frederick Smith, of Attakapas, the above described tract of land. In the deed, it is stated, that the land was granted to Felix Bernard, and the vendor says that he purchased it of Edward Gibbons, as a reference to the Spanish records will show. On the 8th of January, 1819, Adolphus F. Smith, by public act before the judge of the parish of Feliciana, sold the same tract of land to John Rhea, who, under the act of Congress of May 4th, 1826, entitled, " An act supplementary to the several acts for ascertaining titles and claims to land in the St. Helena and Jackson Court-house Land Districts," presented the same to the register and receiver at St. Helena, for confirmation, and they certify that he is confirmed, and entitled to the land under Felix Bernard, the original grantee.

On the 6th of January, 1834, Rhea, by an authentic act, sold to Hearsey, *according to the plat annexed to the grant from the Spanish government*, a tract of land of eight *arpents* front on Thompson's creek, running back between parallel lines to meet the rear lines of the grants, fronting on the Mississippi, being the same lands granted to Don Felix Bernard, containing 236 2-5 *arpents;* but he only warranted the title to 153 *arpents*, fronting on the creek; and at the probate sale of Hearsey's es-

tate, the defendant, Riddle, purchased. It is thus shown, that the plaintiffs claim under a Spanish patent to Delogny, dated in 1799, and the defendants under one to Felix Bernard, dated in 1787, for different tracts of land, which from the plats of survey accompanying each of the patents, do not appear to conflict in any manner. On the contrary, the title to and plat of Delogny calls to be bounded on Zachariah Smith's tract, which an examination of the plat annexed to the sale from Delogny to Crocker and Johnson, and the plat of Kneeland, made in 1810, shows to be the same tract granted to Felix Bernard.

The land in controversy, the plaintiffs allege, forms part of what the witnesses call "the Pinchey tract;" and a witness named Rucker, says that he had known it about ten years previously to [May, 1844; that it was then in the possession of Rhea, under whom the defendant holds as vendee of Hear- sey. Rhea always claimed it, but neither he nor Hearsey lived on it, but on the Bernard tract, though the lattter cultivated it. Kemperling testifies to the Bernard tract being occupied for more than fifty years. The grantee first occupied it, then Gibbons, and he believes Adolphus F. Smith was on it for a time, he being the son-in-law of Gibbons. Rhea never person- ally occupied the premises. Joseph H. Williams, under whom the plaintiffs claim, first cleared a field on the "*Pinchey tract*," but his houses were on the land granted to Lewis Alston. He says that if the full quantity be allowed to the grant to Ber- nard, then the field is on that tract ; but if not, then it is on the "Pinchey tract;" that he knows the side lines of the Bernard claim, and, as he understands them, Williams opened the field on it. He was on it in 1812, or 1818. He says it was gener- ally understood when the "Pinchey tract" was surveyed, that the quantity was made out "by shifty surveying." Bates, the par- ish surveyor, who made a survey under the order of the court, says, that the tracts of land fronting on the Mississippi can all have their full compliment or quantity, without touching the Bernard tract at all ; that it is fully three miles from its back line to the river. He says, that if he was called on to locate the Bernard and Delogny tracts, he would first run out the first named grant, giving it the full quantity. He proceeds to de-

tail his operations on the ground, which it is not necessary to state in detail; but he shows, that if the line claimed by the plaintiffs be assumed as correct, then there is an interference.

The court below was of opinion, that the plaintiffs had made out a regular chain of title from Pedro Robin Delogny to their ancestor; that it was not shown that the defendant, or his warrantors, were invested with the title in favor of Felix Bernard; and that prescription could not be based on the sale from Adolphus F. Smith to Rhea, made in 1819, because no actual residence on the premises was proved, nor did the certificate of confirmation from the United States to him give any title, as it enured to the benefit of Felix Bernard or his heirs, and that, therefore, the defendant had no title; a judgment was rendered against him for the land claimed, and in his favor against the warrantors for the sum of $500, the value of the land, from which judgment the said warrantors have appealed, and made the plaintiffs, and the defendant, Riddle, appellees.

That the Spanish Governor of Louisiana, in January, 1799, conceded, by a complete title, to Pedro Robin Delogny, a tract of land fronting on the Mississippi river of one thousand superficial *arpents*, with specified bounderies, as shown by the patent and survey accompanying it, is unquestionable. The plat and patent both call for the line of Zachariah Smith among others. The other evidence in the record, to wit, the plat made by Kneeland in 1810, and the plat annexed to the sale from Delogny to Crocker and Johnson, show conclusively, that the tract represented on Delogny's Spanish plat, as being Zachariah Smith's, is the identical tract granted to Felix Bernard, twelve years before. The plat by which Delogny sold calls for Bernard's line. After this sale, every thing is left uncertain. It is not shown how much of the land purchased from Delogny was sold by Crocker and Johnson, previous to the sale from the former to the latter of his remaining interest, nor what quantity was transferred by the sale, nor is it shown how much Johnson sold previous to his death. At the sale of his succession two hundred and fifty-four *arpents* were sold to Jos. E. Johnson; two hundred and seventy-five *arpents* to the ancestor of the plaintiffs; and eight hundred *arpents* of swamp land to John Stirling. There

is no specification of the boundaries of these tracts, nor reference to any plat of survey to show in what part of the larger tract they are situated. The quantity sold is all that is stated, and that quantity is much less than the original tract. The plaintiffs allege that the land claimed by them is a part of the one thousand *arpents* granted to Delogny; but the immediate sale to them does not say so, nor can it be inferred from the act of sale to Crocker and Johnson, nor from that of the former to the latter. The plat made by Kneeland, is no where referred to in any of these transactions. In this respect, the case is very similar to that of *Hemken* v. *Britton*,* decided in October last, in the western district, in which we held that the plaintiff could not recover in consequence of the vagueness and uncertainty of his title.

But assuming the title of the plaintiffs to be certain and regular from the original grantee, as held by the court below, let us see if the judgment can be sustained. The evidence proves beyond a doubt, that the boundary of Zachariah Smith, called for in Delogny's patent and survey, is that of Felix Bernard, whose patent and survey are twelve years older, accompanied by possession and cultivation for many years—more than half a century—whilst there is no evidence of any one ever residing on and cultivating that part of the Delogny tract claimed by the plaintiffs, until their ancestor purchased from Johnson's estate, in the year 1824. It has been long settled by this court, that a plaintiff in a petitory action must, to recover against a party in possession, claiming title also, not only show a better title than the defendant has, but must show a title as good as any the defendant can oppose to him, whether it be vested in him or not. 3 Robinson, 206. In the case referred to, and in others, we have said that the outstanding title must be a legal, subsisting one, and a better one than plaintiff's to protect the defendant, and we have on various occasions intimated that, in fairness, it should be stated in the answer, so as to give the plaintiff notice, that he may prepare to meet it. In this case, if the counsel for the

---

*This case had not become final at the period of the adjournment of the court in October.

plaintiffs had objected to the reception of any evidence going to show a title in the defendant, or an outstanding one in some other person, on the ground of none such being alleged in the answer, it is possible that the evidence might have been excluded ; but no such objection was made, and the evidence is before us to be acted on. The title to Felix Bernard is a Spanish patent, equal in dignity to that to Delogny. The plat of survey by Trudeau is as precise and specific in the one case as in the other, and Bernard's patent and plat are nearly twelve years the oldest, supported by direct evidence of occupation and cultivation before Delogny's grant was made at all. There is then a legal, subsisting and better title than that the plaintiffs claim under, in Bernard, or his heirs or assigns, and it must have its full quantity of 236 2-5 *arpents* in preference to the younger title, if it does not interfere with the tracts of land fronting on the Mississippi river. If the statement of Bates be correct, there is no danger of interference, as there is a sufficiency of land to give both patents their full quantity. The defendant is, therefore, protected from eviction by this title, although it may not be legally vested in him.

Upon the principles settled in the case of *Thomas and others* v. *Turnley* (3 Robinson, 206), and in the case of *Kirby's Heirs* v. *Fogleman* (16 La. 277), it would not be difficult to prove that the court below mistook the force and effect of the certificate of confirmation to Rhea, given by the Register and Receiver of the Land Office at St. Helena ; but it is not necessary to go into that question, as, on the grounds stated, we are of opinion that the plaintiffs cannot recover.

The view we have taken of this case makes it unnecessary to decide upon the various bills of exception taken by the plaintiffs, as we have come to our conclusions upon evidence not objected to by them.

It is ordered, adjudged and decreed, that the judgment of the District Court be annulled, and reversed ; and ours is in favor of the defendant and warrantors, with costs in both courts,

*Ratliff*, for the warrantors and appellants.

*Paterson*, for the defendant.

SAME CASE—ON AN APPLICATION FOR A RE-HEARING.

GARLAND, J. The plaintiffs have asked for a re-hearing, for the purpose of correcting the judgment, so far as to have the land claimed by the plaintiffs, and in the possession of the defendant, not included in the Bernard patent, decreed to them. We did not suppose that our opinion could be misunderstood on that point. The defendant and his warrantors never set up any claim, and, as the case is now presented, do not appear to have any rights beyond the limits of the Bernard patent. That grant is their sole protection; and from the pleadings, there does not appear to be any claim to possession beyond it. We, therefore, did not think it necessary to give a judgment, when no conflicting title was set up, nor adverse possession alleged. Riddle purchased at Hearsey's sale no more land than is contained in the patent and survey to Bernard, and he claims no more. We, therefore, do not think it necessary to disturb the judgment.

The re-hearing asked for is refused.