244 So.2d 116 (1971)
Fay ALLEN and Mrs. Thelma Allen Wise, Plaintiffs-Appellants,
v.
PAGGI BROTHERS OIL COMPANY, Defendant-Appellee.
No. 3291.
Court of Appeal of Louisiana, Third Circuit.
January 19, 1971.
Dissenting Opinion January 22, 1971.
Rehearing Denied February 24, 1971.
Writ Refused March 29, 1971.
*117 Gahagan & Kelly by Russell E. Gahagan, Natchitoches, for plaintiffs-appellants.
Watson & Murchison by Daniel T. Murchison, Natchitoches, for defendant-appellee.
Before SAVOY, HOOD and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This is a petitory action by plaintiffs-appellants Fay Allen and Mrs. Thelma Allen Wise in which they claim ownership of an undivided one-half interest in eighty acres of land described as the NE ¼ of the SE ¼ and the SE ¼ of the SE ¼ of Section 6, Township 8 North, Range 8 West, Natchitoches Parish, Louisiana. They are brother and sister and base their title claim on inheritance from their late father, John Allen, who died March 17, 1933. They allege that the defendant appellee, Paggi Brothers Oil Company is not in possession of the above described property but is asserting an adverse claim of ownership based on an alleged title thereto. Paggi Brothers Oil Company filed exceptions of 10 and 30 years prescription acquirendi causa alleging that it and its predecessor in title acquired the subject property in good faith, for valuable consideration and with just title by deed dated February 4, 1920. It further alleges continuous possession since that date. Ultimately, the defendant filed an answer containing a general denial in which the pleas of prescription were re-urged. The exceptions were tried and the plea of prescription of 10 years was sustained by the trial court and plaintiffs' suit was dismissed. From this judgment plaintiffs have appealed.
The evidence produced at the trial of the exceptions show the facts to be as follows: John Allen was married to Bell Hall on July 31, 1909 and the plaintiffs-appellants were born of that marriage. John Allen died March 17, 1933 and Bell Hall Allen is still living. During the existence of the marriage between John Allen and Bell Hall Allen the described eighty acres were *118 acquired by two deeds, both dated December 2, 1919. The first deed was by H. W. Osbourn to Mrs. Bell Allen, whose "husband is John Allen", conveying the NE ¼ of the SE ¼ of Section 6, Township 8 North, Range 8 West, for a cash consideration. The second deed was by John W. Hall to Mrs. Bell Allen "whose husband is John Allen", conveying the SE ¼ of the SE ¼, Section 6, Township 8 North, Range 8 West, for a cash consideration. Each of the cash sales was signed by the respective vendors and Bell Allen. In neither instance did the husband John Allen join in the sale. On February 4, 1920, Mrs. Bell Allen conveyed by cash deed the two above described tracts aggregating eighty acres to one C. W. Hillyer and Paggi Brothers Oil Company of Beaumont, Texas. Neither did the husband, John Allen join in this sale. On December 30, 1960 C. W. Hillyer conveyed his one-half interest in these lands to Paggi Brothers Oil Company for a cash consideration. All deeds are properly recorded in the Conveyance Records of Natchitoches Parish, Louisiana.
The tax records of the Sheriff and Ex-Officio Tax Collector in and for Natchitoches Parish, Louisiana show that the property in question has been assessed in the names of Paggi Brothers Oil Company and C. W. Hillyer since the year 1920 up to and including the year 1960, and thereafter in the name of Paggi Brothers Oil Company to the present time. The records further reflect that in 1923 the property was sold for non-payment of taxes for the year 1922 to one W. E. Davis and redeemed by Hillyer and Paggi on January 31, 1924. It was then adjudicated to the State for 1926 taxes and redeemed February 16, 1970 and again adjudicated to the State for 1931 taxes and redeemed July 17, 1933. All State and Parish taxes from 1920 to date have been paid by the defendant. The record further reflects a timber deed from Hillyer and Paggi to Frost Lumber Industries, Inc. conveying all of the hardwood timber 14 inches in diameter and up, on the property in question, said deed being dated August 18, 1940. Attached to the recorded deed are appropriate minutes of the Board of Directors of Paggi Brothers Oil Company authorizing this transaction. In connection with this deed there appears in the record a properly identified page from the ledger book which forms a part of the corporate records of Paggi and which sets forth the circumstances of this timber deed showing the receipt and entry of the sums derived from the sale of the timber. By document dated October 30, 1940 Hillyer and Paggi executed a five year pasture lease to one Larrie Lambert on the property in question, with said lease granting to Lambert the right to build a fence along the property lines at his own cost and expense with the right of removal of the fence at the expiration of the lease. Corporate records of Paggi were properly admitted into evidence showing the receipt of revenue from the pasture lease. Numerous witnesses testified in connection with the property, its identification, location and use in connection with the lease, and further that Larrie Lambert built a fence around the property and used it for pasture purposes. There were other documents and testimony to the effect that in 1946 the same Larrie Lambert purchased timber on the 80 acres from Paggi which was the same acreage that Frost Johnson had previously cut over for timber purposes in 1940. Records of the Paggi Company also substantiated this. There was further showing of later sales of timber by Paggi on the property in 1954. The record also includes evidence of an oil, gas and mineral lease from Paggi and Hillyer to A. G. Hooper, Jr. in 1952 covering the property in question and a similar lease in 1954 by Hillyer and Paggi to Carter Oil Company. The record also discloses a war games maneuver agreement between Paggi and the United States Government in 1941 on the same property and a release in connection therewith between Hillyer, Paggi and the United States Government *119 dated August 29, 1955. There is further evidence of the sale of timber on said property by defendant to the Davis Saw Mill in 1966. Numerous witnesses testified that the property in question was always recognized as the property of Paggi Brothers, and referred to as the Paggi Brothers Tract. Testimony was also adduced to the effect that as long as anyone could remember no one, other than Paggi Brothers, ever claimed the property in question. The record contains considerable evidence concerning whether or not the lines around the property were identifiable. The property was partially fenced in 1917 and also between 1940 and 1945. There was evidence of timber lines being identifiable and also white painted lines on the trees and blazed lines in addition to the fence.
In seeking reversal of the trial court decree plaintiffs-appellants allege that the court erred in the following particulars:
1) In holding that the subject property was redeemed from the State of Louisiana timely enough to permit its being introduced as evidence at the trial of the exceptions;
2) In holding that one co-owner can prescribe against another in the absence of some proof that notice had been given of an intent to claim adversely; and,
3) In finding that defendant was a good faith purchaser.
Concerning the first specification of error, it is to be remembered that the whole of the 80 acres in this law suit was adjudicated for non-payment of State and Parish taxes on three occasions and redeemed each time by defendant. The property adjudicated for 1926 taxes was not redeemed by defendant until February 16, 1970 and the redemption certificate in connection therewith was filed in the Conveyance Records of Natchitoches Parish on March 3, 1970, one week before the trial of these matters. Although defendant filed its pleas of prescription on October 7, 1969, it later, in its answer which was filed March 6, 1970, re-urged the two exceptions. Consequently on March 10, 1970, the date of the trial, the matters were in proper posture for disposition by the trial court. The pleas of prescription were first fixed for hearing on December 18, 1969 but on joint motion of counsel the fixing was upset and continued until January 9, 1970; set aside again, and refixed for March 10, 1970.
Appellants contend that when their suit was filed, title to the captioned property was in the State of Louisiana, and when the pleas of prescription were filed by defendant, it still remained unredeemed, as well as at the times of the first two fixings. The fact remains however, that the property had been duly redeemed by defendant by the time the exceptions were heard at trial. Although appellants' contention is forceful and impressive, it is well settled that where property previously adjudicated to the State continues to be placed on the assessment rolls for succeeding years and taxes collected thereon from the tax debtor who remains in possession, such acts will be deemed as a waiver of the State's title. Codifer v. Aztec Land Co., 6 Orleans App. 214, and further, that the redemption of a tax title of realty does not create a new title, but simply effaces the tax sale and restores title to its status existing prior to such sale. Housing Authority of City of Shreveport v. Breen, 10 So.2d 395 (La.App.1942). However, of single efficacy on this point is LSA-R.S. 9:5803 which provides as follows:
"In all cases where immovable property has been, or may be, adjudicated or forfeited to the state for non-payment of taxes and has been or is subsequently redeemed by a purchaser in good faith and by just title, or by the heirs or assigns of *120 such purchaser, prescription shall not be interrupted or suspended during the period that title is vested in the state. This Section shall not apply to or affect the three-year prescription provided by law for tax privileges, and in all cases where immovable property has been adjudicated to the state for non-payment of taxes, such property shall only be redeemed upon paying the amounts provided by law."
See also Saucier v. E. Sondheimer Co., 212 La. 490, 32 So.2d 900; Menefee v. Pipes, La.App., 159 So.2d 439; Wilkie v. Cox, La.App., 222 So.2d 85.
In view of these propositions, and in view of the fact that the property was redeemed by the defendant prior to the date of the trial of the exceptions we conclude that the trial judge properly allowed evidence of the 1970 redemption at the trial.
As to whether or not Mrs. Bell Allen, the mother of appellants had the right to sell the property in question we conclude, as did the trial judge, that her sale to Paggi and Hillyer on February 4, 1920 did not convey a good title to the purchasers inasmuch as the captioned property was acquired by her during the existence of the community of acquets and gains between her and her husband John Allen therefore making it community in nature under Civil Code Article 2402, and when she sold it, her husband did not join her in the conveyance. There was no showing that it was other than community property. It follows then that if Paggi is to prevail herein, its title must rest upon its pleas of prescription.
Passing on to the second and third specifications of errors and in order to determine the correctness or lack thereof of the trial court decree we must determine whether or not Hillyer and the defendant acquired the property under conditions necessary for good faith prescription on February 4, 1920 and whether or not the defendant has proved sufficient possession to acquire title under either the 10 or 30 years prescription acquirendi causa.
The articles of our Civil Code applicable to the 10 year prescription relevant to this case are:
"Art. 3478. He who acquires an immovable in good faith and by just title prescribes for it in ten years. This prescription shall run against interdicts, married women, absentees and all others now excepted by law; and as to minors this prescription shall accrue and apply in twenty-two years from the date of the birth of said minor; provided that his prescription once it has begun to run against a party shall not be interrupted in favor of any minor heirs of said party."
"Art. 3479. To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription."
"Art. 3481. Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."
"Art. 3483. To be able to acquire by the species of prescription mentioned in *121 this paragraph, a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title."
"Art. 3487. To enable one to plead the prescription treated of in this paragraph, it is necessary that the possession be distinguished by the following incidents:
1. That the possessor shall have held the thing in fact and in right, as owner; when, however, it is only necessary to complete a possession already begun, the civil possession shall suffice, provided it has been preceded by the corporal possession.
2. That the possession shall have been continuous and uninterrupted, peaceable, public and unequivcoal; a clandestine possession would give no right to prescribe; but he who possesses by virtue of a title can not be considered as a clandestine possessor, for his title leads to the supposition that the possession commenced in good faith, and that is sufficient to enable him to plead prescription."
"Art. 3498. When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits."
"Art. 3437. It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries."
In the case of Martin v. Schwing Lmbr. and Shingle Co., 76 So.2d 328 (La.App. 1st Circuit, 1954), the court, referring to the 10 years prescription acquirendi causa, and referring to other cases cited therein on the subject, stated:
"These articles of the Code have been construed to mean that an owner who purchases under a deed and goes into actual possession of a part with intention of possession to the full extent of his title acquires a perfect title to the whole after the expiration of ten years unless his possession has been interrupted."
"The plain and reasonable meaning of these articles would seem to be that, where one purchases a parcel of land from another who purports to be the owner thereof, and the vendee in good faith and with the bona fide belief that he has acquired the whole, goes into actual possession of a part with intention of possession to the full extent of his title, he thereby acquires a perfect title to the whole after the expiration of 10 years, unless that possession has been interrupted in the meantime by the adverse possession of another, or some other legal claim or proceeding made or instituted within that period. To say that, because some one who never had any possession with a dormant claim to a porsame after that time, merely because the party relying upon prescription did not actually occupy that particular area, is to destroy the very purpose of security which the above-quoted provisions were intended to afford, and to require of one with title, at least against the claims of such third persons, the same species of possessionfoot by footas is provided under the 30 years' prescription of the Code without title, when the very letter of the Code is to the contrary. Such a construction would render it impossible for one examining a title to say that an owner who had possessed under his title for ten years might rest secure; but would still require a test of title to every portion, however small, embraced therein, if it happened to fall without the area tion of the property may still assert the actually occupied.

*122 * * * * * *
"A person is termed a possessor in good faith when he `has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.'
"The possessor in bad faith is `he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.'" LSA-Civil Code Article 3452.
As was stated by the learned trial judge in his well reasoned opinion, there was no evidence in the record that Hillyer and the defendant, both residents of Texas, were not in good faith in acquiring the property. It is well settled that good faith is always presumed in matters of prescription, and the burden of proof is on the one alleging bad faith. C. C. Articles 3481, 3482; Dupuy v. Shannon, 136 So.2d 111 (La.App.1962). Defendant and Hillyer acquired the land from Bell Allen obviously believing her to be the owner thereof. They were not represented by counsel, the only attorney involved being Mrs. Allen's, and they made no examination of the records. The deed from Mrs. Allen was accepted as what it appeared to be: an instrument made in authentic form, regular on its face and sufficient in every way to transfer title to the land if the vendor had good title thereto. Neither is the fact that the deed recited Bell Allen to be the wife of John Allen, although he did not join in the execution thereof, sufficient notice to put the defendants in bad faith. Monsanto Chemical Co. v. Jones, La.App., 160 So.2d 428; Coleman v. Pollock, 191 La. 813, 186 So. 346. We therefore find no evidence showing a lack of good faith by defendant or Hillyer in their original purchase of the 80 acre tract in 1920 and for that matter neither do we find any evidence showing a lack of good faith by the defendant when it acquired the undivided one-half interest of Hillyer in 1960.
We are also convinced that defendant complied with the requirement of notorious, continuous possession.
Following their purchase in 1920 the property was assessed to defendant and Hillyer. Each year thereafter it was so assessed until Hillyer sold his one-half interest to the defendant and then the entire property was assessed to defendant. All taxes for these years were paid by those assessed with the property from the period of 1920.
That the above referred to leases and timber deeds were not just paper transactions is clear from the evidence received at trial. The timber operations of the defendant began in 1940. A witness, H. D. Rogers, recalled that one Joe Ford cut the timber for Frost Lumber Industries about this time. Arthur Lambert, who, at the time of the trial, was 67 years of age and who was the son of Larrie Lambert, testified that he helped his father on this property during the pasture lease agreement. He knew of the fencing of the lands by his father and actually helped in erecting a board and barbed wire fence around the area leased. Following the termination of the pasture lease there was an offer by Larrie Lambert to Hillyer and the defendant to purchase the timber remaining on this property, which was done, and the son Arthur helped in removal of the timber. The testimony of T. S. Ivey describes two more times that timber was sold by defendant subsequent to the above two cuttings of timber. The cuttings were made by Woodrow Wester and later by Wilbur Davis. Defendant's corporate records reflect a payment in December, 1954 from Wester in the amount of $1000.00 and a letter by defendant referring to the timber sold to Wester for the said sum of $1000.00. By stipulation of counsel on both sides, it was agreed that Wilbur Davis, if he would have testified at the trial, would say that he purchased hardwood timber on the lands *123 in question in December, 1966 and that he cut and removed the timber from the two tracts. Defendant's corporate records substantiate payments made by Davis therefor. The witness Ivey further testified that there remain vestiges of the old wire fence and slab fence along the east side of the 80 acre tract and that the west side is marked by hacks and blazes on the existing trees. The existence of the fence and markings are confirmed by the testimony of Bill Wells, a forester, who visited the lands in 1966 and who saw evidence of the previous cuttings. He stated that as of 1966 there was only a small portion of salvageable timber. Mr. Wells testified convincingly that he could identify with reasonable certainty the property lines surrounding the 80 acre tract.
We are convinced as was the trial judge, that Hillyer and the defendant took possession of the 80 acre tract and removed the timber on four occasions commencing in 1940. This process was notice to the world that they claimed the land and had a right to its possession under the recorded title to Hillyer and defendant. This possession consisted of civil acts and actual physical corporeal acts of possession through their timber vendees and lessees which have continued to the date of the instant suit Civil Code Article 3438 provides:
"One may acquire possession of a thing, not only by himself, but also through others who received it for him and in his name. But in this case it is necessary that the person receiving the possession should have had intention of receiving for the other."
The possession of defendant and Hillyer is proved from 1940 to 1960 when Hillyer conveyed his interest to the defendant. From 1960 to date, the defendant has had sole possession of the land.
The plaintiffs were nine years and seven years of age respectively in the year 1920. Their instant suit was not filed until September 22, 1969. In 1934 each plaintiff had reached the age of 21 years.
Although there is ample evidence in the record to show that the 80 acre tract is clearly marked, it was not incumbent upon the defendant to show that the property is completely enclosed in order to establish its claim. Defendant is holding under a valid deed translative of title, describing the full 80 acres. Therefore it is not necessary to show that all of the 80 acres in question were enclosed by a fence for the entire prescriptive period. When a tract is acquired under title, actual possession of part is equivalent to possession of all of the property within the limits described in the deed. See C.C. 3437; Bolding v. Eason Oil Co., 248 La. 269, 178 So. 2d 246.
Plaintiffs-appellants contend that they are co-owners of the property in question in that the property being community in nature, and their father having previously died, their claim is by inheritance of their father's one-half interest in the property. They claim consequently that the defendant cannot prescribe against them inasmuch as they are co-owners; however it is now well settled that where one co-owner goes into and continues possession by reason of a deed translative of title (even though the deed be invalid) the co-owner's possession is then regarded as hostile to any claim of his co-owner, rebutting any presumption that he himself is possessing for his co-owner as well as for himself. See Succ. of Seals, 243 La. 1056, 150 So.2d 13; Continental Oil Co. v. Arceneaux, La.App., 183 So.2d 399; Detraz v. Pere, La.App., 183 So.2d 401. These cases hold that there is an exception to the general rule to the effect that owners in indivision cannot acquire by prescription the rights of their co-owners in and to property held in common under C.C. Art. 3499. Appellant points out that this exception is permissible provided that the co-owner gives notice in no uncertain terms of his intention to possess adversely and the appellant *124 suggests that defendant in this case failed to place the plaintiffs on notice of their intention to possess adversely. We see however that in the Seals, Arceneaux and Detraz cases, supra, that where a coowner goes into and continues possession by reason of a deed translative of title, the recording of the deed itself is regarded as the necessary notice that the co-owners intend to possess hostilely to their other coowners. See also Dupuis v. Broadhurst, La.App., 213 So.2d 528 (Third Circuit, 1968).
Finally, considering this case in its proper perspective, we cannot lose sight of the line of jurisprudence in this state which stands for the proposition that belated claims are not favored. It is apparent that plaintiffs-appellants made no effort to question the title and possession rights of the defendant until 1967 when defendant sought a quit claim deed from plaintiffs which culminated in the present suit.
"The genius of our law does not favor the claims of those who have long slept on their rights and who, after years of inertia, conveying an assurance of acquiescence in a given state of things, suddenly wake up at the welcome vision of an unexpected advantage and invoke the aid of the courts for relief, under the effect of a newly discovered technical error in some ancient transaction or settlement." Lafitte, Dufilho & Co. v. Godchaux, 35 La.Ann. 1161, 1163. See Sun Oil Co. v. Roger, 239 La. 379, 118 So.2d 446; Succ. of Seals, 243 La. 1056, 150 So.2d 13.
Finding that the requirements of C.C. Art. 3479 have been satisfied and that the plea of 10 years acquisitive prescription should be sustained, we find it unnecessary to pass upon defendant-appellee's plea of 30 years prescription.
For the foregoing reasons the judgment of the trial court sustaining defendant-appellee's pleas of prescription of 10 years acquirendi causa and dismissing plaintiffsappellants' suit is affirmed. Costs in both courts are assessed against plaintiffs-appellants.
Affirmed.
HOOD, Judge (dissenting).
I am unable to agree that defendant has acquired title to this 80-acre tract of land by acquisitive prescription of ten years.
The possession which was exercised by defendant was not sufficient, in my opinion, to support a claim for a prescriptive title of any kind. Assuming that it was sufficient to constitute open and adverse possession, however, I think the other requirements essential to claiming title by prescription of ten years are lacking.
My colleagues have found, and I agree, that the vendees named in the deed from Mrs. Allen, dated in 1920, did not exercise any acts of possession at all until 1940, and even then the only possession which they exercised that year consisted of executing a timber deed and a pasture lease. A period of twenty years thus elapsed between the time the void deed, on which defendant bases its prescriptive title, was executed and the time the vendees named in that deed exercised their first act of possession.
LSA-C.C. art. 3479 provides that two of the essential elements of a ten year prescriptive title are "title" and "possession." I believe that in order for the prescription provided by that article to apply, there must be some connection, particularly in point of time, between the acquiring of the "title," although void, and the beginning of the "possession." In my view it takes both a deed translative of title and possession to give adequate notice to the true record owner and to the public that the possessor is taking over the property as owner. If a *125 long period of time elapses between the time title is acquired and the time the claimant goes into possession, then a question arises as to whether the record owner reasonably should have connected these two events together and thus was notified that the possessor went into possession under the old deed and that he is claiming the property as owner.
In the instant suit I feel that the majority has erred in holding that plaintiffs reasonably should have connected the acts of possession exercised by Paggi Brothers for the first time in 1940 to the old deed which was executed by Mrs. Allen twenty years earlier. To permit a person to acquire a ten year prescriptive title under those circumstances would open the door to fraud. It would impose a burden on the record owner to re-examine his title every time anyone committed an act which may be construed as being an act of possession to determine whether there are any old deeds of record, or even any ancient titles, which could be claimed by the possessor to be the basis for his acts.
There are other reasons which cause me to differ with my colleagues in the conclusions which they have reached.
I agree with them that the deed from Mrs. Bell Allen to defendant Paggi Brothers and to Hillyer, dated February 4, 1920, did not convey title to the vendees. When Mrs. Allen's husband died in 1933, however, she became the owner of a one-half interest in the property, since it formerly belonged to the community, and under the doctrine of after acquired title her earlier conveyance to Paggi Brothers and Hillyer then became valid as to her one-half interest. Also, upon the death of John Allen in 1933, plaintiffs in this suit, as his sole surviving children and legal heirs, inherited the remaining one-half interest in the property. Plaintiffs at that time, therefore, became co-owners of the property with Hillyer and Paggi Brothers. Prior to 1933 plaintiffs had no right, title or interest in the property. They acquired an undivided interest in the property for the first time in 1933, several years after the void deed on which defendant relies was executed and seven years before defendant committed its first act which it now claims was an act of possession.
The sale of timber, and most of the other acts of possession which were exercised by defendant Paggi Brothers in 1940 and later, were acts which could have been performed by a co-owner, as such. The fact that they were performed by Paggi Brothers only after the latter became the record owner of an undivided interest in the land should not be construed as notice to the other undivided owners and to the public that Paggi Brothers was claiming the property as owner. The fact that no act of possession was exercised by defendant until after it actually became a co-owner of the property is significant, in that it indicates that those acts of possession were exercised as a co-owner, rather than as sole owner of the property.
My colleagues point out that the owner of an undivided interest in real property cannot prescribe against his co-owners unless "the co-owner gives notice in no uncertain terms of his intention to possess adversely." They cite as authority for that statement the cases of Succession of Seals, 243 La. 1056, 150 So.2d 13; Continental Oil Company v. Arceneaux, 183 So.2d 399 (La.App. 3 Cir. 1966); and Cetraz v. Pere, 183 So.2d 401 (La.App. 3 Cir. 1966).
All three of the cited cases relate to prescription of 30 years, and thus they are not applicable here. Yet, in each of those cases the court held that in order for the owner of an undivided interest to prescribe against his co-owners he must give clear and positive notice to his co-owners at the time he goes into possession that he thereafter intends to possess adversely to them.
*126 If the possessor relies on a deed and his act of possession as constituting clear and positive notice of such an intent to his coowners, then it seems to me that the deed and the first act of possession must occur at about the same time.
In the instant suit I do not feel that the acts of defendant Paggi Brothers were sufficient to give notice "in no uncertain terms" to plaintiffs that defendant from and after 1940 intended to possess the property, as owner, adversely to his coowners.
Finally, it is significant, I think, that this 80-acre tract of land had been adjudicated to the State of Louisiana in 1927 for unpaid taxes, and it was not redeemed until 1970. Title to the property thus was vested in the state in 1940 when Paggi Brothers exercised its first act of possession. I am aware of the provisions of LSA-R.S. 9:5803 to the effect that prescription shall not be interrupted or suspended during the period that title is vested in the state. Our concern here, however, is not whether prescription was interrupted, but instead whether the acts of possession exercised by defendant, beginning in 1940, were sufficient to put his co-owners on notice that from and after that time defendant was claiming to be the sole owner of the property under a void deed executed twenty years earlier. I believe that the fact that several changes in the title took place after the 1920 deed was executed and before the first act of possession occurred constitutes additional support for plaintiffs' position that the old 1920 deed cannot be used as the basis for claiming a ten year prescriptive title here.
For these reasons, I respectfully dissent.
Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.