366 So.2d 580 (1978)
Alton TASSIN et al., Plaintiffs and Appellees,
v.
C. A. RHYNES et al., Defendants and Appellants.
No. 6607.
Court of Appeal of Louisiana, Third Circuit.
September 7, 1978.
Rehearing Denied October 16, 1978.
Writ Refused December 1, 1979.
*581 Ben C. Bennett, Jr., Marksville, for defendants and appellants.
John R. Contois, Marksville, for plaintiffs and appellees.
Before CULPEPPER, WATSON and FORET, JJ.
CULPEPPER, Judge.
The plaintiffs, Alton Tassin and Roy J. Normand, filed this suit which they named "SUIT FOR DECLARATORY JUDGMENT ESTABLISHING TITLE AND BOUNDARIES". They claimed ownership in indivision of approximately 100 acres of land which they contended is alluvion formed on riparian lands owned by the plaintiffs and by the defendants on Red River in Avoyelles Parish. Plaintiffs also asked the court to appoint a surveyor to determine the number of acres of alluvion, and that the court divided the alluvion amongst the respective plaintiffs and defendants and fix the boundary lines. Named as defendants owning other riparian lands were C. A. Rhynes, Malcolm Sayes and Foster Johnson.
The defendant Rhynes filed an answer and a reconventional demand claiming a portion of the accretion by the acquisitive prescription of ten years. By agreement of all parties, this claim by Rhynes was recognized and he was dismissed from the suit.
The defendant Sayes filed an answer and a reconventional demand contending: (1) That the land in dispute is not accretion but is, instead, land cut off of a point when the river suddenly changed its course; (2) That the plaintiff Normand has never owned any land fronting on Red River, and Normand is not entitled to any of the land in dispute; (3) In his reconventional demand, Sayes contends he has been in corporeal possession of all but a few acres of the land in dispute for more than a year prior to the filing of this suit, and that this suit has disturbed his possession and he is entitled to have his possession recognized.
The district judge held the land in dispute is alluvion. He did not discuss the contention by Sayes that Normand never was a riparian owner entitled to accretion. However, he held that Normand, together with Tassin, Sayes and Johnson are riparian owners and, as such, are entitled to a proportionate division of the alluvion in dispute. A court-appointed surveyor made a division of the 76.41 acres remaining after Rhynes' portion was deleted, and the district court judgment approved the survey dividing the land in dispute as follows:
1) 1.41 acres to Foster Johnson (actually, Johnson owned this 1.41 acres pursuant to a reservation of this portion of the land in the 1974 deed whereby *582 Johnson, et al. sold to Sayes a portion of the riparian property now owned by Sayes, together with all of the accretion in front of the property;
2) 15.76 acres to Alton J. Tassin;
3) 33.02 acres to Roy J. Normand;
4) 26.22 acres to Malcolm Sayes.
The trial judge dismissed Sayes' reconventional demand for recognition of his possession on the basis that any such possession by Sayes was as a co-owner in indivision of the alluvion and, therefore, was not possession adverse to the other co-owners.
Only the defendant Sayes appealed.
We find it unnecessary to decide the issue of whether the disputed land is alluvion or is land cut off by a sudden change in the river bed. In either event, the result in this case is the same. The decisive issues on appeal are: (1) Does Normand's 1966 deed of acquisition include any of the alleged alluvion in dispute, which had been formed during the period 1940 to 1944? (2) Was defendant Sayes in possession of most of the land in dispute for one year prior to the filing of this suit? (3) If Sayes was in possession for one year, what is the burden of proof of ownership by Tassin and any other claimants to the land, and did they sustain this burden of proof? (4) Is Sayes entitled to judgment on his reconventional demand for recognition of his possession?
The general facts are that before 1930 Red River flowed generally from north to south but, at the point in question, there was a bend in the river bed toward the west. The point created by this bend in the river was known as "Clark's Point", since the land on the east side of the river at that time was owned by Clark. In its most westerly location, during about the year 1939, the river bed encroached on the land of the plaintiff Tassin on the north side of the bend, on the land of Mayeux, plaintiff Normand's ancestor in title, on the west side of the river bend, and on the lands of the defendants Sayes and Rhynes or their ancestors in title, on the south side of the bend.
Between 1940 and 1944, the river bed moved back in an easterly direction. By 1944, Clark's Point had disappeared completely, and the river bed followed an almost straight course from north to south, cutting off what had formerly been Clark's Point. Today the river bed is in substantially the same location as in 1944.
All parties agree that the eastward movement of the river bed during the period 1940 to 1944 was caused by several new cut-offs across points downstream. These cut-offs eliminated about nine miles of the meanders of the river and substantially increased the velocity of the current.
The river bed, as it existed in 1939 at its most westerly location, is still easily identified by a shallow oxbow lake, with a somewhat higher bank on its west side. This old river bed encroaches on the east boundaries of the land allegedly owned by Tassin, Normand, Sayes and Rhynes at the time this suit was filed on May 24, 1976. The land in dispute at the time suit was filed consisted of over 100 acres, including the old 1939 river bed and the alleged alluvion which was formed as the river bed moved back toward the east to its present location.
Plaintiffs contend the land in dispute is alluvion owned in indivision by several riparian proprietors, and that it should be divided proportionately. Plaintiffs rely on the following articles of our Civil Code:
"Art. 509. The accretions, which are formed successively and imperceptibly to any soil situated on the shore of a river or other stream, are called alluvion.
"The alluvion belongs to the owner of the soil situated on the edge of the water, whether it be a river or stream, and whether the same be navigable or not, who is bound to leave public that portion of the bank which is required by law for the public use."
"Art. 516. If an alluvion be formed in front of the property of several riparian proprietors, the division is to be made according to the extent of the front line of each at the time of the formation of the alluvion."
*583 The defendant Sayes contends the land is not alluvion built up gradually and imperceptibly, but is land which was left when the river suddenly changed its course from its 1939 location and cut across Clark's Point. Sayes relies on LSA-C.C. Article 518 which provides:
"Art. 518. If a river or stream, whether navigable or not, opens itself a new bed by leaving its former channel, the owners of the soil newly occupied shall take, by way of indemnification, the former bed of the river, every one in proportion to the quantity of land he has lost.
"They shall again take their former property, if the river or stream returns to its former channel."
As to the issue of whether the land is alluvion, formed successively and imperceptibly, or whether it is land left on the west bank of the river by a change in course, the district judge stated in his written reasons:
"The court hesitates to call this build up of land `accretion', since counsel for Malcolm Sayes so vigorously urges that the river course changed rather suddenly and not imperceptibly as the Louisiana Civil Code describes and defines accretion. However, from a great preponderance of the evidence, both lay people and experts, the court is convinced and so holds, that the acreage forming the basis of this suit, is in fact accretion. It will refer to it hereinafter as such. One expert for Sayes thought otherwise, from a study of aerial maps, but he had made no observation on the ground. Even he, however, thought the change occurred between 1942 and 1944. He had no maps in between those years to be specific as to when the change occurred. But the lay people who lived there while the change was going on, testified that they could see the left descending river bank, on the opposite side of this accretion, cave in and fall into the river; that over a space of two years or rather two high waters, it had changed its course, filling up substantially the old stream and gradually building up the elevation of the land in dispute to a now useful and cultivable area, except for `pond holes', and a part of the old stream which has not yet completely filled in and hold impounded waters. But, in the court's mind, it is clear the build up in elevation thereof, is still going on and each flooding of Red River over its banks, causes deposits of silt and sand, which imperceptibly has built up the area in dispute and even continues to build it up in its elevation even now. So, the court is convinced it is accretion."
We have some doubt as to whether the trial judge was correct in holding that the land in dispute is alluvion. It is difficult to distinguish the present case from Dickson v. Sandefur, 259 La. 473, 250 So.2d 708 (1971). In Dickson, the river had been "eating away" a point of land during high waters for several years, and then, during the flood of 1945, which was one of the greatest in the history of Red River, the river completely abandoned its old bed and cut a new bed across the point. As is shown by the above quotation from the trial judge's written reasons, the facts of the present case are not radically different from those in Dickson.
Since the issue is close, and a decision thereof is not necessary and would be dictum in the present case, because the result we reach is the same regardless of whether the land in dispute is alluvion or is a cut-off, we express no opinion on the question, although we think it necessary to discuss the matter for a full understanding of the case.
We will next address the issue of whether the plaintiff Normand's 1966 deed of acquisition excluded the alleged alluvion which had been formed during the period of 1940 to 1944. The record shows that in 1966 Normand purchased from the heirs of Charles J. Mayeux a tract of land described in the Act of Sale as follows:
"A certain tract of land in the 2nd Ward of Avoyelles Parish, La., near Red River, containing 86.50 Acres, more or less, said tract lying and being in the SE ¼ of NW ¼ of SW ¼ and fractional NW ½ of SW ¼ of Section 29, T 3 N, R 4 E, being *584 bounded now or formerly on the North by Foster Johnson and C. O. Brown; East by Batture and Walter Johnson; South by Walter Johnson et al; and West by Avoyelles Bank & Trust Co., C. O. Brown and Charley Coco, as per plat of E. B. Messick, surveyor, recorded in Plat Book 4, folio 64, of the records of Avoyelles Parish, La. See also A-77, page 454 and A-15, page 113 of the records of Avoyelles Parish, Louisiana." (Emphasis added)
Defendant Sayes points out that at the time the alleged alluvion was formed between the year 1940 and 1944, Charles J. Mayeux had a record title to the above described property. Assuming that Mayeux's title was valid, he became the owner of any accretion. In the 1966 deed from the heirs of Mayeux to Normand, the property is described as a specific tract containing 86.50 acres, more or less, in Section 29. The property is further described as being bounded now or formerly by other owners, and the eastern boundary is stated to be bound "east by Batture and Walter Johnson". Furthermore, the property is described as being shown as per a plat of E. B. Messick, recorded in Plat Book 4, folio 64 of the records of Avoyelles Parish. However, this plat is not in the record before us on appeal. Counsel for Sayes has attached a copy of a 1943 Messick plat to his brief, but we cannot consider this because it is not in evidence.
A sketch attached to plaintiffs' original petition shows the alleged riparian lands of Tassin, Normand, Sayes and Rhynes and the "Accretion" in dispute. On this sketch, the eastern boundary of the Normand property is shown as a straight line running north and south. The south portion of this line is bound on the east by the defendant Sayes, successor in title to Walter Johnson, who is named as an owner on the east in the above quoted description in the 1966 deed to Normand. The sketch also shows that about the northern one-half of Normand's east line is bound on the east by "Accretion". Thus, the sketch attached to plaintiffs' petition indicates that Normand's alleged riparian land is bound on the east by Sayes and by "Accretion".
Normand did not acquire the above described tract of land until 1966. This was 22 years after the accretion in dispute had been formed during the years 1940 to 1944 while Charles J. Mayeux had a record title to the above described property. Assuming that Mayeux had a valid title to the riparian land when the accretion was formed, he became the owner of the accretion. At the time of the sale to Normand in 1966, the heirs of Mayeux owned both the formerly riparian land and the accretion. However, when the Mayeux heirs sold to Normand in 1966, they described the land sold as being bound on the east by "batture". This necessarily means that they did not include any portion of the batture in the land sold.
These facts are corroborated by the plat by the court-appointed surveyor in this case, which plat shows Normand's east line was formerly a straight line, running north and south, until the river encroached on the line from the east and left the present shallow oxbow lake. The alleged accretion which bounds Normand's land on the east is clearly shown on this plat.
Jurisprudence has established the rule that if, at the time of sale of a riparian estate, the alluvion or batture attached has attained a sufficient elevation to be susceptible of private ownership, the alluvion does not pass with the riparian land unless it is expressly so stated in the Act of Sale. State v. Richardson, 140 La. 329, 72 So. 984 (1916); Maginnis Land & Improvement Company v. Marcello, 168 La. 997, 123 So. 653 (1929). In the present case, it is clear that the "batture" had formed and was susceptible of private ownership by the Mayeuxs by the time they sold to Normand in 1966. Yet, the Mayeuxs sold to Normand only a specifically described 86.5 acres and did not sell any of the "batture" at issue here. Therefore, we conclude that plaintiff Normand is not entitled to any of the "batture" in dispute. It may be that the heirs of Charles J. Mayeux still have a claim to a portion of the "batture", but they are not parties to the present suit and that issue is not before us.
*585 We will next consider the issue of whether the defendant Sayes was in possession of most of the land in dispute for one year preceding the filing of this suit on May 24, 1976. The record shows that by deed recorded on April 25, 1974 in the conveyance records of Avoyelles Parish the defendant Sayes purchased from the Sauciers and Foster Johnson Lots 18, 19 and 20 of the R. J. Johnson Partition, as shown by a plat of survey by E. B. Messick in 1932. These lots were riparian to the river bed in its westernmost location in 1939, and, therefore, the owners of the lots at the time of the formation of the accretion in dispute during the period 1940 to 1944, became the owners of the accretion. The 1974 deed to the defendant Sayes also expressly described and conveys "all batture and accretion between the extension northerly to Red River of the east line of Lot 18 and the west line of Lot 20." It is in this deed that Foster Johnson reserved 1.41 acres.
Furthermore, the record shows that by deed recorded on January 20, 1975 in the conveyance records of Avoyelles Parish, the defendant Sayes acquired from Walter E. Johhnson Lot # 21 of the R. J. Johnson Partition "together with all accretion and alluvion, attached thereto and forming a part thereof. Said tract bounded now or formerly on the north by Alton Tassin, east by Malcolm O. Sayes, and on the south and west by Roy Normand."
In these two conveyances, the defendant Sayes acquired, more than a year prior to the filing of this suit, a record title to all of the land at issue on appeal. However, he does not claim possession of all of this land for one year prior to the date this suit was fled. He testified he had possessed by farming and raising cattle on all of the land at issue lying south of and including the field road or turn row which runs on a line which is approximately an extension in an easterly direction of the north line of the plaintiff Normand's property. Sayes stated that the plaintiff Tassin is in possession of the land in dispute north of this road.
Using the plat prepared by the court-appointed surveyor in dividing the property amongst the plaintiffs and the defendants, it appears that defendant Sayes was in corporeal possession for more than a year prior to the filing of this suit of all of the 76.41 acres in dispute, except about 7 acres on the north side of the road which is shown as a "Field Road" on the plat.
Having determined that defendant Sayes was in possession of all but seven acres of the land in dispute, the next question is what is the burden of proof of ownership by Tassin and any other claimants to the land. When plaintiffs filed their original petition, they entitled it "SUIT FOR DECLARATORY JUDGMENT ESTABLISHING TITLE AND BOUNDARIES". In his brief, Sayes contends this suit is actually a petitory action, since plaintiffs seek to be recognized as owners of portions of the land in dispute. We find it unnecessary to decide whether this is a suit for a declaratory judgment or a petitory action, because, in either event, the court can decide the issues of possession and ownership presented by the pleadings, and the burden of proof of the plaintiffs as against the defendant in possession is the same.
In Pure Oil Company v. Skinner, 294 So.2d 797 (La.1974) the plaintiff, Pure Oil Company, filed a concursus proceedings, depositing in the registry of the court certain royalties and naming as defendants the claimants to ownership of the land to which the royalties were attributable. There was a dispute as to the ownership of 1 ½ acres of land of which the Simontons had been in possession for over one year. The Skinners had a record title to the 1½ acres, but there was an 18-year gap in their chain of title from 1854 to 1874, and the Skinners had not proved ownership by acquisitive prescription. The Supreme Court held that the burden of proof of ownership by the Skinners, who were out of possession, is provided in LSA-C.C.P. Article 3654 which reads as follows:
"When the issue of ownership of immovable property or of a real right is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the *586 ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right is so presented, the court shall render judgment in favor of the party:
"(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless the adverse party makes out his title thereto; or
"(2) Who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action."
In Pure Oil the court concluded that since the Simontons were in possession, the Skinners had the burden of proving a title good against the world and not just a better title than the Simontons. Since there was a gap of 18 years in the Skinners' chain of title, and they had not proved ownership by acquisitive prescription, the court held the Skinners had failed to sustain their burden of proof.
Although the Pure Oil Company case was a concursus and the present case is a suit for declaratory judgment, the burden of proof on the issue of ownership of immovable property is the same in the two actions, under the express provisions of LSA-C.C.P. Article 3654. Furthermore, even if, as defendant Sayes contends, the present proceedings is a petitory action, the burden of proof is again the same under the provisions of LSA-C.C.P. Article 3653 and the decision in the Pure Oil Company case.
Applying these rules to the present case, we find that the only evidence in the record as to the chain of title of the plaintiff Tassin is a deed dated February 19, 1974 from Foster J. Johnson to Alton J. Tassin, conveying 56 acres in Section 29, further described as Lot 23 of the R. J. Johnson Partition, together with all batture and alluvion allocable to said property by accretion. Tassin has introduced no further chain of title, nor has he proved ownership by acquisitive prescription. Clearly, under the rule stated in Pure Oil Company v. Skinner, he has not sustained his burden of proving title good against the world as to that portion of the property in dispute which is in the possession of the defendant Sayes.
As to the seven acres north of the road, of which Sayes is not in possession, Alton Tassin has proved a better title than Sayes. Tassin's deed of acquisition dated February 19, 1974 includes the accretion. As stated above, Sayes also has a deed of acquisition to this land, but Sayes' acquisition was on January 20, 1975. As a general rule, the more ancient title prevails. Furthermore, the defendant Sayes has not sought in these proceedings to be recognized as owner of any of the land. He has sought in his reconventional demand only to have his possession recognized and sustained.
We conclude that plaintiff Tassin has sustained his burden of proving a better title than the defendant Sayes to the approximately seven acres of which Sayes is not in possession. In these proceedings, we will recognize Tassin's ownership of this seven acres.
Plaintiffs argue, and the trial judge held, that the possession by Sayes was only as a co-owner in indivision of the alluvion in dispute and not as sole owner for himself. In the recent case of Allen v. Paggi Bros. Oil Company, 244 So.2d 116 (La.App. 3rd Cir. 1971), writ refused, we considered this issue. In the Allen case, one of the co-owners in indivision was in possession of the property, but he had a deed of record translative of title to full ownership. We recognized the general rule that a co-owner in indivision possesses for all of the co-owners and not solely for himself. However, we held an exception to this general rule is that where the co-owner gives clear and positive notice to his other co-owners of his intention to possess adversely to them, his possession is adverse. We held further that where a co-owner goes into and continues possession under a deed translative of title, recording of the deed is regarded as the necessary notice to the other co-owners that *587 the possession is hostile and adverse to them. We cited Succession of Seals, 243 La. 1056, 150 So.2d 13; Continental Oil Company v. Arceneaux, La.App., 183 So.2d 399, and Detraz v. Pere, La.App., 183 So.2d 401.
As discussed above, we have already found that by deeds recorded respectively on April 25, 1974 and January 20, 1975, both of which dates were more than a year prior to this suit, the defendant Sayes acquired a title to all of the land in dispute here. After he bought the land he went into corporeal possession by farming it and raising cattle on it. Actually, Sayes predecessors in title, the Johnsons, had also possessed this land. Mr. Cass Normand, father of the plaintiff Normand, testified that during about the year 1951 he rented portions of the land from the Sauciers and the Johnsons and farmed it for about two years. Thus, the evidence shows that when defendant Sayes went into possession of this land, he did so as owner under the two deeds by which he had acquired a record title to the land. He did not possess as co-owner in indivision.
The final issue listed is whether the defendant Sayes is entitled to judgment on his reconventional demand for recognition of his possession. For the reasons stated above, it is clear that defendant Sayes was in possession of all but about seven acres of the land in dispute for more than a year prior to the date this suit was filed. His possession meets the requirements of LSA-C.C.P. Articles 3658 and 3660, and he is entitled to recognition of this possession.
There remains the question of the claim by Foster Johnson to 1.41 acres. In a deed recorded on April 25, 1974 from the Sauciers and Foster Johnson to defendant Sayes, conveying Lots 18, 19 and 20 of the R. J. Johnson Partition, this 1.41 acres was reserved by Johnson. The trial judge recognized Foster Johnson's ownership of this 1.41 acres, and on this appeal the defendant Sayes has not claimed any rights of possession or ownership thereto. Accordingly, we will recognize Foster Johnson's ownership of the 1.41 acres and his right to possession.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that Foster Johnson be recognized as the owner of 1.41 acres located in Section 29, T3N, R4E, Avoyelles Parish, Louisiana, the 1.41 acres being more fully shown on that certain plat of survey by Louis J. Daigre Associates, Inc. dated May 18, 1977, a copy of which is on file in the record of this suit.
It is further ordered, adjudged and decreed that Alton J. Tassin be recognized as the owner of a tract of land containing approximately seven acres located in Section 29, T3N, R4E, Avoyelles Parish, Louisiana, and being more particularly shown on that certain plat of survey by Louis J. Daigre Associates, Inc. dated May 18, 1977, a copy of which is on record in these proceedings, said seven acres, more or less, being shown on said plat as all of that portion of the 15.1 acres allocated to Alton Tassin lying north of the "Field Road", as shown on said plat.
It is further ordered, adjudged and decreed that Malcolm O. Sayes be recognized as having the right to possession of all of the 76.4 acres in dispute in this suit, except the 1.4 acres herein awarded to Foster Johnson and the seven acres, more or less, herein awarded to Alton Tassin, the land of which Sayes is recognized to be the lawful possessor being more fully described as follows: A tract of land containing 68 acres more or less, located in Section 29, T3N, R4E, Avoyelles Parish, Louisiana, and being more fully shown on that certain plat of survey by Louis J. Daigre Associates, Inc. of date May 18, 1977, a copy of which plat is of record in these proceedings, the said 68 acres, more or less, being all of the 76.4 acres shown on said plat as being in dispute in this suit, except the 1.4 acres designated as being owned by Foster Johnson, and the seven acres, more or less, lying north of the "Field Road" which runs generally in an east and west direction across the 15.1-acre tract designated on said plat as being owned by Alton Tassin.
It is further ordered, adjudged and decreed that all claims by Roy J. Normand are rejected and his suit is dismissed.
*588 It is further ordered, adjudged and decreed that all costs in the lower court, including the surveyor's charges, as well as the costs of this appeal be assessed against the plaintiffs, Alton J. Tassin and Roy J. Normand.
REVERSED AND RENDERED.