EASTERN DIST.
*April,* 1835.

BEDFORD *vs.* URQUHART ET AL.

BEDFORD
*vs.*
URQUHART
ET AL.

ON AN APPLICATION FOR A RE-HEARING.

8L 241
51 557

In a petitory action, it is not necessary that the plaintiff should show title in himself, good against the whole world, and perfect, in order to recover against a naked possessor.

The plaintiff in the petitory action, is bound to produce a title as owner *causa idonea ad transferendum dominium,* to repel the presumption of ownership resulting from mere possession; and the date of his title ought to be anterior to the possession of the defendant.

As a general rule, an action of revendication can only be maintained by the owner; yet it may sometimes be maintained by one who is not the real owner, but was in the way of becoming so when he lost the possession.

So, he who was in possession in good faith, in virtue of a just title, and lost the possession before the period required for prescription, can recover it in a petitory action, from one who is in possession without title.

In a petitory action, the presumption of ownership resulting from mere possession, will be repelled by exhibiting such a title, on the part of the plaintiff, as would have formed the basis of the ten years' prescription, if the possession under it had continued, together with evidence of possession, in virtue of such title, anterior to the commencement of the defendant's possession, and would otherwise authorise a judgment, restoring him to possession as owner.

A sale of immoveable property, followed by tradition by a person styling himself the attorney in fact of the owner, but whose power of attorney is not produced, is only defective for want of the evidence of *his* authority, and not a nullity of form resulting from his legal incapacity. If he had stated himself to be the tutor or curator of the owner, the sale would be null for defect of form, as the purchaser would be considered as having purchased in bad faith, from a person legally incapable of selling.

So, where the purchaser was in possession for more than twenty years, under a conveyance executed by a person styling himself attorney in fact, without evidence of the agency, it was held that this furnished a legal presumption of the agency.

31

Whatever is alleged on one side, and denied on the other, may be proved by legal evidence.

So, where the plaintiff alleges certain property was conveyed to a person called in warranty, who, in his answer, denies it, the former has a right to produce in evidence, the act of sale to the latter, in support of his allegation.

A warrantor has a right to plead every exception in defending the cause which the defendant himself might have pleaded; but it does not follow, that if the original defendant has set up a particular title, by which he made an important admission, the warrantor or the court can disregard it.

This case comes before the court on an application for a re-hearing.   See the decision *ante*, 234.

*Strawbridge*, *Eustis* and *Rost*, for the defendants and warrantors, applied for a re-hearing, on the following grounds :

1.  The court erred in supposing "Harrod's answer contains nothing more than a general denial of all facts alleged against him."   This is an error of fact, as the answer expressly denies the plaintiff had any title ; which, put him on the proof of it, and failing, his suit was dismissed.

2.  Has the plaintiff made out a good title? we deny it. He seeks to recover, not by making out a good title in himself, but by showing a bad one in us.    This he cannot do.   The law says, "the plaintiff, in an action of revendication, must make out his title, otherwise the possessor, whoever he may be, shall be discharged."    *Code of Practice*, art. 44.

3.  Harrod, the last person called in warranty, has shown no title.   We hold it to be the law, that the defendant is bound to show no title, until the plaintiff produces one apparently good, which we deny he has done in this case.

4.  It is a general principle, never doubted, that the defendant had a right to rest on his possession, until the plaintiff shows a good title.

5.  This court has declared, that "persons claiming the estate, are bound to make good their title against the legal possessor ; and, in opposition, the latter has a right to prove, by legal means, any title which may defeat the claim of the

EASTERN DIST.
*April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

plaintiff. White *vs.* Holstein, 4 *Martin,* 474. This is the principle of the common law, that a defendant in ejectment might set up an outstanding title, in a third person; this we understand to be the spirit of the 44th *article of the Code of Practice;* for, if it is shown that a third person is the real owner, it is clear the plaintiff has not made out a good title. Here the plaintiff himself has shown an outstanding title in *Martin de la Madrid.* See also, case of Sassman and wife *vs.* Aymé, 9 *Martin,* 267.

6. Thus the doctrine was settled before the *Code of Practice.* When the jurisconsults reported the *projet* of the 44th *article of the Code of Practice,* they referred to the *old Civil Code, p. 478 art. 24,* which says, "either honest or knavish possessors, who have possessed one year, ought to be maintained in their possession until they who trouble them, clearly *prove* their rights; and if a demand against a possessor is not grounded on *good and sufficient titles,* it is enough to *allege possession, without producing any other defence.*" This is the true interpretation of the 44th article.

It remains to examine plaintiff's authorities which we say do not support the position assumed.

Referring to 11 *Martin,* 714, we find nothing in relation to this point. In the case of Crane *vs.* Marshall, 1 *Martin, N. S.,* 577, the defendant *pleaded title under the will by which plaintiffs claimed.*

What the defendant pleaded in Verrett's case, 4 *Martin, N. S.,* 402, does not appear; nor does it appear that the plaintiffs were permitted to make out a title for defendant; but if it did, the suit was not one "in revendication of property," but a pursuit by a mortgagee for his debt.

In Trahan's case, 2 *Louisiana Reports,* 210, it is expressly shown that defendant pleaded title in Brashears, under whom plaintiff claimed, and gave in evidence the sheriff's deed for the land, and the intermediate conveyances to himself. To correct the expressions of the court, in such a case, viz: that it was "immaterial whether the pleadings showed the fact, provided the evidence did," into an authority to show that a plaintiff might make out defendant's title, and that if that

BEDFORD
*vs.*
URQUHART
ET AL.

title led to a common source, defendant must be bound in the most extraordinary logic we have lately heard.

When a party pleads title, or as the court says, it is the same thing, gives it in evidence, he cannot impeach it. Why? That is the question which solves the difficulty. And why? Because no man is permitted to blow hot and cold: he cannot plead a title, or offer a title in evidence, and then nullify what he has done. He cannot produce a witness, and then show that witness unworthy of credit; because the acts are inconsistent and contradictory.

Does it follow, that he cannot gainsay the plea, or the proof of his adversary. The suit exists because they cannot agree. Now, may it please the court to show that Harrod cannot attack the plaintiff's title, it must appear that Harrod, either by the pleadings or by the evidence offered, (we agree it is immaterial which) has placed himself in a situation where it would be inconsistent in him to do so; and that all the other defendants have done so likewise. Let this be done, and we abandon the cause.

If it cannot, this cause must stand in our reports at war with Sassman's case. It is no longer the law, that " when the defendant pleads the general issue alone, and does not set up title, the plaintiff cannot be relieved from the necessity of proving *a legal title in himself,* by showing that the defendant, too, has a defective title, emanating from the same source." How can the court know that this is the only title by which the defendant holds the premises.

Harrod, at least, has pleaded the general issue, the court says so, in their decree : he has set up no title, and yet Bedford has been relieved from the necessity of proving a legal title in himself, by showing that the defendant has a defective title, emanating from the same source. If the two decisions can be reconciled, if the latter be not an innovation on our jurisprudence, again we say we will abandon the cause.

*Bullard, J.,* delivered the opinion of the court.

Since the argument in this case, on the re-hearing, we have holden it under advisement an unusual length of time, and

EASTERN DIST.
*April*, 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

have considered it with all that attention and deliberation called for by the intrinsic difficulty of the questions to be settled, and the earnestness and ability with which our former judgment has been combated. Having no interests but those of truth, no aim but justice, according to law, we are disposed to take up the case without reference to the opinion first pronounced.

At the threshhold of this inquiry, we meet the question, whether the 44th article of the Code of Practice has introduced a new principle in relation to the petitory action, or whether it merely reasserts the well known maxim, "that the plaintiff must recover by the strength of his own title, and not by the weakness of his adversary's." "The plaintiff," says the Code, "in an action of revendication, must *make out his title*, otherwise, the possessor, whoever he be, shall be discharged from the demand."

Pothier, in treating on this kind of action, adopts the rule, that the plaintiff in revendication, in order to succeed in his demand, must base it on some title of property ; and such titles are said to be those, which are of a nature to transfer from one to another the ownership of the thing "*causæ idonæ ad transferendum dominium*." Among titles of that description, he enumerates an act of partition, by which it should appear that the thing sued for, fell to the share of the plaintiff in the succession of some of his relations. "When the possessor," says he, "against whom the suit is brought, proves that his possession was anterior to the title which I produce, although he produces none on his part, the title which I exhibit, is not alone sufficient, unless I produce another more ancient, which shows that he who by his contract, which I produce, sold or gave me the property, was really the owner ; for I cannot make myself a title by procuring a sale or donation of a property which you possess, from a person who does not possess it ; you, as possessor, are presumed to be the owner, rather than he who sold it to me, and who did not possess it, and of whose right I can prove nothing. But when the title which the plaintiff exhibits, is anterior to the possession of him against whom

EASTERN DIST. *April, 1835.*

BEDFORD
*vs.*
URQUHART
ET AL.

In a petitory action, it is not necessary that the plaintiff should show title in himself, good against the whole world, and perfect, in order to recover against a naked possessor.

The plaintiff in the petitory action, is bound to produce a title as owner *causa idonea ad transferendum dominium* to repel the presumption of ownership resulting from mere possession; and the date of his title ought to be anterior to the possession of the defendant.

As a general rule, an action of revendication can only be maintained by the owner; yet, it may sometimes be maintained by one who is not the real owner, but was in the way of becoming so when he lost the possession.

So, he who was in possession, in good faith, in virtue of a just title and lost the possession before the period required for prescription, can recover it in

the action is brought, and who on his part produces none, this title alone is sufficient. He, who by this title, sold or gave the property to the plaintiff or his author or predecessor, is sufficiently presumed to have been the proprietor and possessor, and to have transferred the possession and property. And further, even although it should appear that he who by the title which I produce, sold or gave me the property which I sue for, was not the owner, if I purchased in good faith, having had reason to believe that he who sold or gave it to me, and of which I saw him possessed, was the owner, that title alone would suffice against a possessor who shows no title." *Pothier, Dom. de Pro.,* 323.

We are of opinion, that the Code has not introduced any new principle on this subject. It cannot be necessary in every petitory action, that the plaintiff should show title in himself good against the whole world, and perfect, in order to recover against a naked possessor. He is bound to produce a title, as owner, *causa idonea ad transferendum dominium,* to repel the presumption of ownership, resulting from mere possession, and the date of his title ought to be anterior to the possession of the defendant.

We have also the authority of Pothier, for assuming as a principle, that although regularly the action of revendication can be maintained only by the owner, it may sometimes be maintained by one who is not the real owner, but was in the way of becoming so, when he lost the possession. For he who was in possession in good faith, in virtue of a just title, and lost the possession before the period required for prescription, can recover it in a petitory action, from one who is in possession without title. *"Il n'est pas precisement nécessaire que le titre en vertu duquel j'ai possédé la chose fut un titre valable, il suffit que j'aie eu quelque sujet de le croire valable pour que je sois reputé avoir eté juste possesseur de la chose, et que je sois reçu à cette action lorsque j'en ai perdu la possession."* Same, *No.* 292, 293.

Let us now examine under what title the plaintiff seeks to be declared owner of one undivided half of the lot in dispute. He alleges that he is the sole heir of his mother,

that the property in dispute was possessed by his father and mother, in community, by virtue of a sale from Canas, attorney in fact of Martin de la Madrid, that on the death of his mother, his title in one undivided half vested; that his father remained in possession for some years, and finally surrendered the whole to his creditors, by whose syndics it was sold, that Harrod & Ogdens became the purchasers and that a part of it is now in possession of the defendant Urquhart, by a title unknown to the plaintiff, but which he believes to be derived from the vendees of the syndics.

EASTERN DIST.
*April*, 1835.

BEDFORD
vs.
URQUHART
ET AL.

a petitory action, from one who is in possession without title.'

The immediate title of the plaintiff here set up is heirship, *pro herede,* a transmission to him of his mother's right by hereditary ` succession. The fact that the property was possessed during the existence of the community, that it was in the actual possession of Bedford, in virtue of the sale from Canas, at the time his wife died, and up to the period of his surrender, is beyond doubt. Whatever rights the wife had, vested in her heir at her death, and from that time, the possession of the husband must be considered as the possession of the heir, then a minor under the age of puberty. Leaving out of view for the present, the deed from Canas to Bedford, the next ascending link in the title, we come to examine the question whether the title *pro herede* alone, is sufficient to enable the heir to recover against a naked possessor. Considering the defendant in possession, without allegation of title, and relying on mere possession, how far does the plaintiff entitle himself to recover by proving his heirship and his possession as heir, anterior to the commencement of the possession of the defendant.

We think it a sound principle, that the presumption of ownership resulting from mere possession, will be repelled by exhibiting such a title on the part of the plaintiff, as would have formed the basis of the ten years' prescription, if the possession under it had continued, together with evidence of possession, in virtue of such title, anterior to the commencement of the defendant's possession, and would authorise a judgment restoring him to possession as owner.

In a petitory action, the presumption of ownership resulting from mere possession will be repelled by exhibiting such a title on the part of the plaintiff, as would have formed the basis of the ten years' prescription, if the possession under it had continued, together with evidence of possession, in virtue of such title, anterior to the commencement of the defendant's possession, and would otherwise authorise a judgment restoring him to possession as owner.

EASTERN DIST.
April, 1835.

BEDFORD
vs.
URQUHART
ET AL.

Let us consider then, the plaintiff as in possession, and relying in an action against him, on the prescription of ten years under his title. The mere title *pro herede*, would perhaps not be sufficient, for he derives from his ancestor only such title as she had, together with the right of continuing in possession, until prescription is acquired under the primitive title of the ancestors. The conveyance from Canas coupled with his heirship, would constitute the basis of his prescription. The question, therefore, resolves itself into this, does the sale from Canas, styling himself the attorney in fact of Martin de la Madrid, constitute a just title which may form the basis of the ten years' prescription?

That it is a sale, followed by tradition, is evident. The defect is, the want of evidence of the authority of Canas, and not a nullity of form, resulting from his legal incapacity. If he had stated himself to be the tutor or curator of the owner, the sale would be null for defect of form, as the purchaser would be considered as having purchased in bad faith from a person legally incapable of selling. The tradition of the thing in pursuance of the sale, certainly furnishes some presumption of authority, and the purchaser may well have supposed that he was buying from a person authorised to sell, and may be regarded as holding *unimo domini*, and in good faith, " *La bonne foi en matiere de prescription, consiste dans l'ignorance du droit d'autrui sur ce qu'on possède. Bonæ fidei emptor esse videtur, qui ignoravit rem alienam esse aut putavit eum qui vendidit jus vendendi habere.*" *Merlin Rep.* verbo prescription.

In the case of Bourguignon *vs.* Boudousquie this court held that possession for more than twenty years, under a conveyance executed by a person styling himself attorney in fact, without evidence of the agency, furnished a legal presumption of the agency. In that case the power was by act *sous sing privé*, but not proved. It was, therefore, no better unaccompanied by tradition and long possession, than if it had never existed, and the evidence of agency had depended altogether on the assumption of that quality, by the vendor,

A sale of immoveable property, followed by tradition, by a person styling himself the attorney in fact of the owner, but whose power of attorney is not produced, is only defective for want of the evidence of his authority and not a nullity of form resulting from his legal incapacity. If he had stated himself to be the tutor or curator of the owner, the sale would be null for defect of form, as the purchaser would be considered as having purchased in bad faith, from a person legally incapable of selling.

So where the purchaser was in possession for more than twenty years under a conveynanc executed by a person styling himself attorney in fact without evidence of the agency, it was held that this furnished a legal presumption of the agency.

strengthened by long possession under the deed.    6 *Martin,*
*N. S.,* 153.

In the case now before the court, nearly thirty years have
elapsed since the execution of the conveyance by Canas, and
the only persons interested, in contesting his authority, to wit:
De la Madrid or his heirs, have acquiesced, notwithstanding
the open and public possession of Bedford, before his surrender,
and for aught that appears to the court, of those who
succeeded him.    If the present plaintiff were defendant in a
petitory action, it is the opinion of this court, the title now
set up by him, would form a sufficient basis of prescriptive
right.    It is asserted by the counsel for the appellees, that the
decree heretofore pronounced, is an innovation on the
jurisprudence of the state, and several cases are cited to
prove it.    The first is that of *White et al.* vs. *Holston et al.* 4
*Martin,* 474, in which the court said that "the persons claiming
the estate, were bound to make good their title, against the
legal possessor, and in opposition the latter has a right to set
up and prove by legal means, any title which may defeat the
claim of the plaintiffs."    It appears that the plaintiffs claimed
an estate as forced heirs; the defendant in possession set up a
title, distinct from the will, which it was the principal object
of the suit to annul as inofficious.    An objection was made
to the introduction of evidence, to prove any other title than
that derived under the will, because the defendant had
accepted the estate, agreeably to an inventory made by
competent authority.    But the court said the defendant had
set up a title distinct from the will and had a right to do so,
"but if it did appear clearly," says the court, "that Mrs.
Holston has accepted the property as an inheritance from D.
White, we are of opinion she ought to be estopped from
pleading or proving any title in herself, distinct from or
independant of his testament."    Here the general principle is
recognised, which is not denied, that the defendant has a right
to show title derived from any source, unless estopped by
setting up a particular title in the answer.

The case of *Sassman and wife* vs. *Aymé,* 9 *Martin,* 267, is
next urged as settling a contrary doctrine.

32

EASTERN DIST.
April, 1835.
BEDFORD
vs.
URQUHART
ET AL.

In that case, the plaintiff claimed property as heir of her deceased father, and the general issue was pleaded, the defendant relying on possession alone. The document produced by the plaintiff in support of her title proved, that her father was, for aught that appeared, still alive. Nor did she prove any possession in herself, under the pretended partition. Here then she showed an utter want of title in herself, as alleged by her, and denied by the defendant. There was in the record a copy of a sale, by which it would appear that the defendants had acquired title, under the same provisional distribution of the estate of the absent father. It was doubtful who introduced it in evidence. The court presumes from some circumstances, that it was introduced by the plaintiff, in support of her defective title, and then uses the expression, quoted with great emphasis, by the counsel for the appellees, " Taking this for granted, we are of opinion, that in a case like this, where the defendant pleads the general issue alone, and does not set up title, the plaintiff cannot be relieved from the necessity of proving a legal title in herself, by showing that the defendant has a defective one, which emanates from the same source. How can the court tell that this is the only title by which the defendants hold the premises."

The two cases differ very widely. In Sassman's case, the plaintiff claimed as heir of her father, and it turned out on the evidence offered by herself, that she was not an heir ; that her father, an absentee, was legally presumed to be still alive. In the present case, the plaintiff alleges heirship and proves it; he proves possession under the sale from Canas, both before and after the death of his mother. In the former, the the plaintiff relied on the naked title *pro herede*, without pretending to show how her father acquired the property; in the present, he shows a sale, by a person assuming to act as attorney in fact, accompanied by tradition, and followed by long possession.

But the appellees contend, that they show an outstanding title in De la Madrid, as they have a right to do. In doing so, they assume the right to question the act of his real or

assumed agent, whom he has not thought proper to question himself, for nearly thirty years. Such a nullity appears to us, relative and not absolute.

EASTERN DIST.
*April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

Thus far we have examined the case independently of the the answers of the original defendant, and of the several warrantors, previous to Harrod & Ogdens, and of the evidence in record, tending to show that Harrod & Ogdens purchased from the syndics of Bedford, and that by sundry conveyances the property came into the possession of Urquhart. The admissibility of this evidence is questioned, and it was rendered subject to all legal exceptions.

Each defendant successively annexes to his answer, calling in his warrantor, a copy of the conveyance by which he acquired title in the premises, until we come to the last, Charles Harrod, one of the firm of Harrod & Ogdens, who denies both his sale and obligations, as warrantor, and the title of the plaintiff, and all the facts alleged by him. These different conveyances, appear to have been read in evidence, without objection, except the one from the syndics of Bedford to Harrod & Ogdens.

In inquiring into the legal admissibility of this document, it must not be overlooked, that the plaintiff expressly alleges, that the syndics conveyed the property to Harrod & Ogdens, and this fact is denied by the answer of Harrod. It cannot be denied, that as a general rule, whatever is alleged and denied, may be proved by legal evidence. The effect of the evidence is another question. A sale, purporting to be to a commercial firm, and accepted only by one partner, may not, in itself, be proof against the partner, who did not except, but it tends to prove it, and evidence that the other partner accepted and acquiesced in it afterwards, may make full proof of the fact. Harrod, in effect, disclaims having acquired any title under that deed, or having conveyed any, or incurred any responsibility, by the subsequent sale, by his partner, in which he did not concur. Under the pleadings in this case, we think the document admissible, in support of the plaintiff's allegation.

*Whatever is alleged on one side and denied on the other, may be proved by legal evidence.*

*So, where the plaintiff alleges certain property was conveyed to a person called in warranty, who, in his answer denies it, the former has a right to produce in evidence, the act of sale to the latter, in support of his allegation.*

EASTERN DIST.
*April,* 1835.

BEDFORD
*vs.*
URQUHART
ET AL.

A warrantor has a right to plead every exception in defending the cause which the defendant himself might have pleaded; but it does not follow, that if the original defendant has set up a particular title, by which he made an important admission, the warrantor or the court can disregard it.

The warrantor, by the Code, has a right to plead every exception in defending the cause, which the defendant himself, might have pleaded; but it does not follow as a necessary consequence, that if the original defendant has set up a particular title, and thereby made an important admission, the warrantor can disregard it, or that it is to be disregarded by the court. There is no privity in this case, between the last warrantor and the original defendant, nor between the plaintiff and the last warrantor. The plaintiff can recover only of the original defendant, and he of his immediate warrantor, and so on, in succession, as they are called in. The plaintiff may certainly strengthen his title, by the admissions of his adversary, if it appears by those admissions, that they both derive title from a common source, It was said, in the argument, that we cannot inflict a title on the defendant. Undoubtedly not, but if he has chosen to adopt and set up one, on which he relies against his warrantor, he cannot afterwards repudiate it, on discovering that it is better to have no title than a bad one. The sale from Gilly & Pryor to the defendant Urquhart, recites that they acquired the property from Stephen Henderson; the latter called in warranty, sets up title under Harrod & Ogdens, in virtue of an act of sale, which accompanies his answer, signed only by G. M. Ogden, in behalf of the firm. In that deed it is recited that the property is the same purchased by them of the syndics of Bedford. This recital in the deed, is evidence at least against Ogden, whose heir is a party, if not against Harrod, that the property was acquired from Bedford. All these acts of sale, were in evidence and produced, as it appears, by the defendants themselves. Independently of the deed from the syndics to Harrod & Ogdens, they show that the defendant set up a title, which is traced back to Bedford's estate.

Not only does the defendant allege title, as derived through Gilly & Pryor, but he alleges the insolvency of the community of Bedford and wife, and that the debts are still due and unpaid, and claims for the value of the improvements made by him.

Upon the whole, after the most deliberate attention, we have been able to bestow on this case, we are not satisfied, that the judgment first pronounced, was erroneous, and it must remain undisturbed.