294 So.2d 797 (1974)
The PURE OIL COMPANY
v.
Henry Carl SKINNER et al.
Henry Carl SKINNER et al.
v.
W. Clayton SIMONTON et al.
Nos. 54087, 54088.
Supreme Court of Louisiana.
April 29, 1974.
Rehearing Denied June 7, 1974.
*798 John M. Shuey, Shuey, Smith & Carlton, Shreveport, for defendants-applicants.
Bobby L. Culpepper, Donald C. Brown, Holloway, Baker, Culpepper & Brunson, Jonesboro, Ray A. Barlow, Hargrove, Guyton, Ramey & Barlow, Shreveport, for plaintiff-respondent.
BARHAM, Justice.
We granted writs (285 So.2d 541 (La. 1973)) to review the decision of the Court of Appeal on the issue of a plaintiff's burden of proof in a real action when defendant is the possessor of the property in controversy. Defendants, the relators in these cases, contended in their writ applications that the decisions of the Court of Appeal (284 So.2d 608, 284 So.2d 614 (La.App.2d Cir. 1973)) conflict with that of the Third Circuit in Deselle v. Bonnette, 251 So.2d 68 (La.App.3d Cir. 1971), wherein it was held that in a petitory action against a defendant in possession, a plaintiff must make out his title to the property in dispute without regard to the title of the party in possession.
The Court of Appeal in the instant cases held that respondents, the parties claiming title or ownership of the disputed land against adverse claimants in possession without a deed translative of title, did not have to prove a title good against the world but only had to prove better title than relators.
The issues in the instant cases were first presented for consideration in 1961 when The Pure Oil Company, which had oil, gas and mineral leases covering the disputed property from both claimants, instituted a concursus proceeding by depositing royalties attributable to the property in controversy in the registry of the court and citing both relators and respondents to assert their respective interests. Subsequent to the institution of the concursus proceedings, respondents instituted a boundary action against the relators and, by stipulation, the parties agreed that judgment rendered in the concursus proceedings would be determinative of the issues in the boundary action.
The one and one-half acres tract of land, the ownership of which is the subject of the controversy, is claimed under two chains of title. It was established in the lower courts to their satisfaction, and to ours, that neither respondents nor relators have valid record title to the property in dispute.
Code of Civil Procedure Article 3654 provides:
"When the issue of ownership of immovable property or of a real right is presented in an action for a declaratory judgment, or in a concursus, expropriation, or similar proceeding, or the issue of the ownership of funds deposited in the registry of the court and which belong to the owner of the immovable property or of the real right is so presented, the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right in a possessory action, unless the adverse party makes out his title thereto; or
(2) Who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action."
The record in this case establishes, and it is undisputed, that the relators have possessed the property in question since 1947. Therefore, it is clear that the burden of proof placed on respondents is greater than that provided in Code of Civil Procedure Article 3654(2), the burden of proving a better title. The statutory imposition of a higher burden of proof than simply proving better title when an adverse claimant is in possession of disputed land leads to the *799 inevitable conclusion that respondent's burden was to "make out his title thereto." In other words, respondents were required to prove valid record title, to show title good against the world without regard to the title of the party in possession. C.C.P. Arts. 3653, 3654. See 2 A. Yiannopoulos, Louisiana Civil Law Treatise, § 137 (1967); 35 Tul.L.Rev. 541, at 547 (1961). This respondents have failed to do. The record reveals that there is a 16-year break in the title of the respondents from 1858, when an entry by Charles M. Cawthoon from the United States Government is recorded, to 1874, when conveyance of the subject property from Jeremiah Payne to Elizabeth J. Colvin was recorded.
Upon oral argument, in response to an inquiry by the Court, respondents contended that they had established acquisition of prescriptive title to the property in dispute prior to 1947, when relators entered into possession of the tract in dispute. The state of the record, however, does not support this contention of respondents and there is no holding by the lower courts to this effect. Respondents, therefore, have not established either valid record title or prescriptive title to the property in dispute.
Hutton v. Adkins, 186 So. 908 (La.App. 2d Cir. 1939), the case relied upon by the Court of Appeal for the holding that relators were required only to prove better title than respondent who was in possession without a deed translative of title, is hereby overruled.
The judgments of the lower courts are reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of the relators, Felix L. Simonton, Lula Bell Simonton Fish, Hattie Simonton Sample, Edwin S. Keasler, David A. Keasler, Jr., James R. Keasler and Rose Villa Plantations, Incorporated, decreeing that they are declared owners of the following described property:[*]
One and one-half acres, more or less, situated in the southeast corner of the Southwest Quarter of the Northwest Quarter, Section 32, Township 19 North Range 3 West, Lincoln Parish, Louisiana, the said one and one-half acres, more or less, being that portion of said forty lying south of Claiborne Road and east of the Old Settlement Road.
It is further ordered that all costs are assessed against respondents, Henry Carl Skinner and Henry Carl Skinner, Jr.
Reversed and rendered.
SUMMERS and MARCUS, JJ., dissent and assign reasons.
MARCUS, Justice (dissenting).
I respectfully dissent. I agree with the opinion of the Court of Appeal. 284 So.2d 608 (La.App.1973).
SUMMERS, Justice (dissenting).
The Skinners in these proceedings are the parties out of possession of the disputed lands. They are claiming title against the Simontons, the parties who have been in possession for more than one year. The trial court and Court of Appeal have found that the deed under which the Simontons are claiming is not translative of title. Apparently the majority agrees with this finding. I agree also, and I shall therefore consider the Simontons as mere possessors.
The only fault, if it can be considered such, in the chain of title asserted by the Skinners is a missing link between the original entry from the United States Government by Charles M. Cawthoon in 1858 and a deed from Jeremiah Payne to Elizabeth J. Calvin in February 1874, a period of sixteen years. However, as the trial judge found,
"It is well known that prior to the creation of Lincoln Parish, as a parish, in the 1870's, that there are many missing deeds and records relating to title during that period of time, since Lincoln Parish was not, at that time, a parish at all, but was a part of either Union, Ouachita or Jackson Parishes."
*800 After 1874 the links in the Skinner chain of title are complete. Their ownership was never brought into question until the Simontons enclosed the disputed one and one-half acres in 1947.
Since the concursus proceeding provoked these adverse claims between the Skinners and Simontons in 1961, the issues formed by the pleadings have assumed the character of a petitory action, with the Skinners, out of possession, claiming title against the Simontons, who are in possession but without semblance of title.
The first error committed by the majority is its decree that the Simontons are the owners of the property. In the posture in which the pleadings place the parties, the possessors can only be maintained in their right to possession, and, perhaps, be decreed entitled to the funds on deposit by virtue of the concursus proceedings. La. Code Civ. P. art. 3654. They assuredly cannot be decreed the owners of property when the majority has found that the possessors have no "valid" title.
Moreover, on the record before us, I would say that the Skinners have a title good and valid against the world. They have a complete and unbroken chain of title from 1874 to date. Their possession was disturbed in 1947 and, since these adverse claims were asserted in 1961 when this concursus proceeding was filed, there is no question of an adverse title in the Simontons acquired by the prescription of thirty years.
"An owner of property does not lose his title by prescription by being out of possession for any length of time, unless some one else has held adverse possession long enough to acquire title by prescription." Ducre v. Milner, 169 La. 819, 126 So. 72 (1930).
More importantly, however, the majority is further in error when it imposes upon the Skinners, plaintiffs in a petitory action, who are out of possession, claiming title as against the Simontons who are possessors without title, the obligation "to prove a valid record title, to show title good against the world without regard to the title of the party in possession." Under this stringent requirement the majority has held that the break in the chain of the Skinner title from 1858 to 1874 denies them the title requisite to maintain their petitory action.
The requirements of proof of title imposed upon a plaintiff in a petitory action were not changed by the enactment of Article 3654 of the Code of Civil Procedure. Under that article the possessor is entitled to be maintained in possession unless the adverse party "makes out his title" to the immovable or real right in question. Article 3653(1) of the Code of Civil Procedure utilizes the identical language:
"To obtain a judgment recognizing his ownership of the immovable property or real right, the plaintiff in a petitory action shall:
"(1) Make out his title thereto, if the court finds that the defendant is in possession thereof; ...."
As the comments to Article 3653 make clear,
"When the defendant is in possession, this article makes no change in the law. The words `make out his title' are taken from Art. 44 of the Code of Practice, and are intended to have the same meaning as given to them under the jurisprudence interpreting the source provision."
In addition, in a "Summary of Procedural Changes in Chapter 1" by Henry G. McMahon, appearing prior to the codal articles relating to real actions, this statement is found: "Art. 3653 makes no change in the burden of proof imposed on the plaintiff when the defendant is in possession." Article 44 of the Code of Practice of 1870, like the Code of Practice of 1825, declares "The plaintiff in an action of revendication must make out his title, otherwise the possessor, whoever he be, shall be discharged from the demand." (emphasis added).
*801 It is not open to question, therefore, that the standards established by the jurisprudence interpreting Article 44 of the Code of Practice still govern the proof required of a plaintiff in a petitory action.
Considering the importance of land titles, it may be appropriate to recall the first principles established by this Court on the question before us. To do so, I quote from Bedford v. Urquhart, 8 La. 241, 245 (1835) as follows:
"At the threshold of this inquiry, we meet the question, whether the 44th article of the Code of Practice has introduced a new principle in relation to the petitory action, or whether it merely reasserts the well known maxim, `that the plaintiff must recover by the strength of his own title, and not by the weakness of his adversary's.'
"`The plaintiff, says the Code, `in an action of revendication, must make out his title, otherwise, the possessor, whoever he be, shall be discharged from the demand.'
"Pothier, in treating on this kind of action, adopts the rule, that the plaintiff in revendication, in order to succeed in his demand, must base it on some title of property; and such titles are said to be those, which are of a nature to transfer from one to another the ownership of the thing `cause idonae ad transferendum dominium.' Among titles of that description, he enumerates an act of partition, by which it should appear that the thing sued for, fell to the share of the plaintiff in the succession of some of his relations.
"`When the possessor,' says he, `against whom the suit is brought, proves that his possession was anterior to the title which I produce, although he produces none on his part, the title which I exhibit, is not alone sufficient, unless I produce another more ancient, which shows that he who by his contract, which I produce, sold or gave me the property, was really the owner; for I cannot make myself a title by procuring a sale or donation of a property which you possess, from a person who does not possess it; you, as possessor, are presumed to be the owner, rather than he who sold it to me, and who did not possess it, and of whose right I can prove nothing. But when the title which the plaintiff exhibits, is anterior to the possession against whom the action is brought, and who on his part produces none, this title alone is sufficient. He, who by this title, sold or gave the property to the plaintiff or his author or predecessor, is sufficiently presumed to have been the proprietor and possessor, and to have transferred the possession and property. And further, even although it should appear that he who by the title which I produce, sold or gave me the property which I sue for, was not the owner, if I purchased in good faith having had reason to believe that he who sold or gave it to me, and of which I saw him possessed, was the owner, that title alone would suffice against a possessor who shows no title.' Pothier, Dom. de Pro. 323.
"We are of opinion, that the Code has not introduced any new principle on this subject. It cannot be necessary in every petitory action, that the plaintiff should show title in himself good against the whole world, and perfect, in order to recover against a naked possessor. He is bound to produce a title, as owner, causa idonea ad transferendum dominium, to repel the presumption of ownership, resulting from mere possession, and the date of his title ought to be anterior to the possession of the defendant.
"We have also the authority of Pothier, for assuming as a principle, that although regularly the action of revendication can be maintained only by the owner, it may sometimes be maintained by one who is not the real owner, but was in the way of becoming so, when he lost the possession. For he who was in possession *802 in good faith, in virtue of a just title, and lost the possession before the period required for prescription, can recover it in a petitory action, from one who is in possession without title.
'Il n'est pas precisement necessaire que le titre en vertu duquel j'ai possede la chose fut un titre valable, il suffit que j'aie eu quelque sujet de la croire valable pour que je sois repute avoir ete juste possesseur de la chose, et que je sois recu a cette action lorsque j'en ai perdu la possession.' Same, No. 292, 293."
Again in Verdun v. Gilmore, 128 La. 1063, 55 So. 675 (1911), the principles were repeated:
"`It is a principle of law, so familiar as to have become trite, that a plaintiff in a petitory action must recover upon the strength of his own title, not upon the weakness of that of his adversary.' Rowson v. Barbe, 51 La.Ann. 347, 350, 25 So. 139, 140
"It is true that the rule thus stated is relaxed to the extent that, as against a mere trespasser, a plaintiff in a petitory action is not required to exhibit a title `good against the world'. And the joint heir or owner may, perhaps, recover the whole of property, in which he has an undivided interest, from a mere possessor without title. Police Jury v. Robichaux, 116 La. [286,] 293, 40 So. 705. But it is only when a plaintiff, seeking to recover property from a party in possession, exhibits at least a better right than that of mere possession, that the question of the defendant's title need be inquired into, since there is no reason why the possession of one person should be disturbed at the instance of another, who shows no better right to such possession. And that is, in effect, the language of the law, which reads:
"`The plaintiff in an action of revendication must make out his title, otherwise the possessor, whoever he may be, shall be discharged from the demand.' Code Prac. art. 44 (Italics by the court.)" (emphasis added.)
The statement sometimes used that the plaintiff in a petitory action must make out his title "against the whole world" is explained early in our law by the decision in Williams v. Riddle, 10 Rob. 505 (La.1845) where Mr. Justice Garland said:
"It has long been settled by this court, that a plaintiff in a petitory action must, to recover against a party in possession, claiming title also, not only show a better title than the defendant has, but he must show a title as good as any the defendant can oppose to him, whether it be vested in him or not. Thomas v. Turnley, 3 Robinson, 206. In the case referred to, and in others, we have said that the outstanding title must be a legal, subsisting one, and a better one than plaintiffs' to protect the defendant, and we have on various occasions intimated that, in fairness, it should be stated in the answer, so as to give the plaintiff notice, that he may be prepared to meet it."
As I understand this statement, it means that the defendant in a petitory action, who is in possession, may oppose to the plaintiff's title the title of any other (the whole world), and if he does, and if the title thus opposed to the plaintiff's is a better one than plaintiff's, defendant cannot be deprived of his possession by the plaintiff, the reason being that the better title opposed to plaintiff's has the superior right to dispossess the possessor. Therefore, the right is reserved by the law to the better title to bear against defendant's possession, and plaintiff's action must be dismissed.
When these principles are applied to the case at bar, it is readily apparent that the Simontons have not opposed the Skinners' title by the title of anyone else. They have only asserted their deed which is not translative of title and hence is no title at all. The Simontons have only the rights of possessors to assert against the title of the Skinners.
Cases that have been decided indicate that the burden upon the plaintiff in a petitory action is less where the defendant is a mere possessor than where defendant *803 possesses by some semblance of record title. Phelps v. Hughes, 1 La.Ann. 320 (1846); Glover v. Haley, 118 La. 649, 43 So. 265 (1907); Zeringue v. Williams, 15 La.Ann. 76 (1860); Bedford v. Urquhart, 8 La. 241 (1835); Gravenberg v. Savoie, 8 La.Ann. 499 (1852); Young v. Chamberlain, 15 La.Ann. 454 (1860). The clear implication to be drawn from this rule is that the plaintiff in the petitory action need not establish a perfect title to prevail against the possessor.
The traditional rule to be applied here, and what is meant by "make out his title", is well expressed in Smith v. Chappell, 177 La. 311, 148 So. 242 (1933):
"A petitory action is one brought by an alleged owner of real estate who is out of possession against another having possession to determine ownership. The settled jurisprudence of this state is that a plaintiff in a petitory action, in order to recover, must rely on the strength of his own title and not on the weakness of that of his adversary. In order to maintain his suit, he carries the burden of proving title in himself. The title of the defendant is not an issue until plaintiff has proved an apparently valid title in himself." (emphasis added.)
From this statement of the Court, supported by a long line of decisions, I conclude that "an apparently valid title" is all the Skinners had to prove to overcome the presumption of ownership arising from possession. Johnson, Real Actions, 35 Tul.L.Rev. 541 (1961). By doing so the Skinners proved their right as owners to dispossess the Simontons. At this stage of the proceeding it was incumbent upon defendants to assert their title. Having failed to establish any title whatever, the "apparently valid" title of the Skinners was sufficient to entitle the Skinners to a decree of ownership and an order to the Simontons to deliver possession.
To impose the requirement of a title perfect against the whole world, when no better title is asserted to oppose the plaintiff's title in a petitory action, is virtually to require the impossible in some cases, as this case illustrates. Undoubtedly no complete chain of title can be established by the Skinners, for the deeds needed to complete the chain between 1858 and 1874 were lost. In many instances, as we all know, court houses have burned and the deeds needed to complete chains of title are nonexistent. The invalidity of the Skinner title upon which the majority relies is the sixteen-year break in the chain between 1858 and 1874. Otherwise the title is in all respects good and valid. In my view the Skinners have not only made out an "apparently valid" title, they have established a good, valid and perfect title against every title opposed to it.
To permit a possessor to occupy one's property for more than a year, and then compel the owner to come forth with a complete chain of title, perfect in all respects, to oust the possessor is entirely unsupported by the statutes or decisions of this Court. Such a rule is certain to create many problems seriously impairing stability of titles in this State.
I respectfully dissent.
NOTES
[*] The following property description was stipulated by the parties as correct.