FOIL, Judge.
On October 6,1983, Gerard Barousse and Margaret Storm, Co-Administrators of the Succession of William Harry Talbot, filed a possessory action against Beverly Ann Norton, wife of/and Marcus L. Pittman, Jr., in No. 76,308, 22nd Judicial District Court, Parish of St. Tammany. By order dated April 12,1984, The Administrators of the Tulane Educational Fund, a/k/a Tulane *691 University (Tulane), were substituted as parties plaintiff, since Tulane had inherited Talbot’s interest in the property described below. On May 25, 1984, a judgment was rendered and signed, recognizing Tulane’s right to possession of, and maintaining Tulane in possession of, the following described property:
ALL THAT CERTAIN PIECE OR PARCEL OF GROUND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servi-tudes, appurtenances and advantages thereunto belonging or in anywise appertaining, lying and being located in Section 42, Township 7 South, Range 11 East, St. Tammany Parish, Louisiana, and being more particularly described as follows, to-wit:
From the comer common to Sections 42 and 48, Township 7 South, Range 11 East, on the left bank of the Bogue Fala-ya River, St. Tammany Parish, Louisiana, go North 65 degrees 25 minutes East 1183.0 feet; thence North 68 degrees 07 minutes West 23.5 feet to the POINT OF BEGINNING.
From the POINT OF BEGINNING go along the northwesterly side of Riverside Drive North 26 degrees 33 minutes East 870.5 feet; thence go North 75 degrees 30 minutes West 1122.8 feet and set a point on the left descending bank of the Bogue Falaya River. Thence recommence at the POINT OF BEGINNING and go North 67 degrees 59 minutes West 499.1 feet along an old fence line to a point on the left descending bank of the Bogue Falaya River; thence go up the left descending bank of the Bogue Falaya River to the point heretofore set. Containing 18.46 acres. All in accordance with map or plat of survey by Jeron R. Fitzmorris dated May 24, 1983, revised June 17, 1983.
Pittmans were given sixty (60) days to file a petitory action. On July 24, 1984, Pittmans filed the instant petitory action wherein they sought to be recognized as owners of the following described property:
All that certain piece or parcel of land, situated in the Parish of St. Tammany, State of Louisiana, together with all buildings and improvements thereon, and all the rights, ways, privileges, servi-tudes, prescriptions, both acquisitive and liberative, heriditaments, immovable by destination, chattels, fixtures, accessories and all other appurtenances attached to, forming part or located thereon, said land being more fully described and designated in accordance with a survey made by Joseph Pugh, Parish Surveyor, under date of November 1, 1943, a blue print thereof being attached to and made part of the deed dated July 27th, 1946, executed by Henry L. Hammett, as follows, to-wit:
From the corner common to Sections 42 and 48, Township 7 South, Range 11 East, on the left bank of the Bogue Fala-ya River, run North 65 degrees 15 minutes East 1178 feet to an iron corner on the East side of cattle guard on Riverside Drive; thence North 68 degrees West 726 feet to an iron corner on the left bank of the Bogue Falaya River, to the place of beginning.
Beginning at the above described corner, thence South 68 degrees East 726 feet; thence South 58 degrees 23 minutes East 621.7 feet; thence South 31 degrees West 515 feet; thence North 48 degrees 30 minutes West 1063.9 feet to an iron corner on the left bank of the Bogue Falaya River; thence following the meanderings of said River on it’s left bank, upstream to the place of beginning, and containing 9.65 acres, and is a part of Section 42, Township 7 South, Range 11 East, Greensburg District, Louisiana. The above description being according to survey made by C.R. Schultz, Surveyor, a blue print of which is attached hereto as part hereof.
The Joseph Pugh map dated November 1,1943, referred to above, is Tulane Exhibit # 6. The C.R. Schultz map, dated June 7, 1950, is Tulane Exhibit # 28. The Jeron R. Fitzmorris map, dated May 24, 1983, revised June 17, 1983, is Tulane Exhibit #11.
The northwestern comer of the property which the Pittmans seek to be recognized *692 as owners of is marked on the Pugh map and on the Schultz map as an iron. On the Fitzmorris survey, it is shown on the point as an iron found, according to the legend on the map, but is not marked other than that.
There is no dispute as to the boundary line between the Tulane property and the Pittman property extending from the iron shown found on the Fitzmorris survey (Tulane Exhibit # 11) on the west side of Riverside Drive, going North 67 degrees 59 minutes East 499.1 feet to what Tulane contends is the present bank of the river and Pittman’s northwest comer. Both the Pugh map (Tulane Exhibit #6) and the Schultz map (Tulane Exhibit # 28) extended this line with the same bearing to the iron shown on the point on the Fitzmorris map (Tulane Exhibit # 11).
Pittmans contend that their description goes all the way to the iron on the point as shown on the Pugh map (Tulane Exhibit #6) which was then on the river bank. The surveyor then traced the perimeter of the property to the southwest comer which was also on the river bank and thence meandered the east bank of the river in a northerly direction to the iron shown on the point in the Fitzmorris survey (Tulane Exhibit #11). Pittmans contend that they own the property to the river bank from the acquisition in 1950 until the suit was filed and any accretion on the said property belongs to them.
Tulane claims that Pittman’s property line to the river bank stops at the red “X” on the Fitzmorris survey (Tulane Exhibit # 11). The Pugh and Schultz surveys overlap on the Fitzmorris survey and it is this overlapping parcel of land which is in question between the parties.
The trial court found that the Pittmans do not hold title good against the world on the subject property, as is required to be proved in a petitory action. The trial court held that the title resides in Tulane’s property description, which has always recited the banks of the river as the boundary.
The trial court set forth the following reasons for its holding:
“The case arose because Tulane’s ancestor in title, William H. Talbot, dredged the lagoon between the two properties removing the majority of the point bar, alluvial island and eddy accretions which were formed between 1919 and 1952. The dredging converted the area into a wide bay. After thorough review of the expert testimony as well as other evidence in the case, the Court is convinced that at the time the dredging operations began in 1952, the point bar, island and eddy point had formed to such a degree as to provide a land bridge over the disputed area. This land bridge was disected by a slough which provided run off from the Talbot property in wet weather. The small lagoon behind the land bridge was more marsh land than water by the time the activities began. The land bridge was completely destroyed by Talbot’s dredging of the area to make the bay. Talbot never obtained a letter of permission for the dredging operations from Pittman though he was required by the Town of Covington, as a stipulation to the issuance of their permit, to obtain the permission of all landowners who would be affected by the dredging. (See attached appendix to these reasons, numbers 1-13 for a picture of the hydrodynamics of the river and the affect on the properties involved).
The river, having an unswervable determination to deposit sand and silt on the point bar and the eddy area because of its natural dynamics, has begun the point bar process again. The effect of this river action will be to reform the land bridge. Undisturbed it will continue to build in a down river action. Whether the point bar attaches itself again to Dr. Pittman’s land or not, the net effect of the river’s activity will be to destroy the only viable river access on the Pittman property. (See appendix to reasons number 13, Plaintiff’s exhibit #23).
Before addressing the main issue in this case, the Court must first determine if plaintiffs are in fact riparian landowners with title good enough against the world to allow the Court to consider any reme *693 dies. PURE OIL COMPANY V. SKINNER, 294 So.2d 797 (La.1974).
Tulane and the Pittmans trace their title back to the Maille estate, and the property now owned by Dr. Pittman was cut out of that estate on December 22, 1919 when Alcinee Oulliber and her co-owners sold a parcel from the estate to George Kent. The survey identifies a small pine tree, then close to the water’s, edge as the corner between the Kent and Maille estates. The description meanders the Abita River on the south west boundary of the Kent property but fails to do so on the bank of the Bogue Falaya. Instead a heading is dropped between the northern and southern boundary points on the Bo-gue Falaya side.
The descriptions in the subsequent conveyances do not appear to include the alluvion which continued to form along the banks, until 1943. In 1943, because of a sale from De La Vergne to Hammett, Joseph Pugh resurveyed the land and extended the property line between the old Maille and Kent estate to the edge of the water on the then well formed point. Though this may have been poor surveying practice, the Court is convinced that Pugh would not have extended the line to the alluvial river edge unless there had been a land bridge present. However, there is no evidence that the surveyor ever got the permission of the contiguous landowners to extend the line in such a fashion. The extension of the line encroached on the property described in the Maille/Talbot estate.
The description in the De Le Vergne-Hammett sale for the first time called the boundaries under the Pugh point bar pipe and meandered the river. Hammett sold the property in 1946 to Edmondson. Edmondson died and his heirs sold the property in 1950 to plaintiff who had another survey conducted. The river, of course, continued to do what it had been doing all along, and the iron, placed by Pugh on the point bar, was no longer on the river’s edge by the time plaintiffs purchased the property.
Plaintiff and his family resided on the property and possessed to the edge of the alluvion identified in the Pugh survey. They cut the grass on the point. They fished, swam and put their boat in the river from the point. Photographs taken in 1955 indicate that land masses had formed with vegetation indicating that the strip was susceptible of ownership. In wet weather, the slough running off from the Talbot property made a rivulet between the point bar and the sand bar island which was attached by then. The Pittmans placed wooden boards over the slough run off and walked out to the point for picnics and water related family outings. They even pushed a 1933 Ford panel truck out to the point and left it there.
Within two years after Dr. Pittman purchased and went to live on the property, he and Mr. Talbot began what was to be many years of hostile discussions about who owned the point and the alluvial deposits. The situation between the landowners disintegrated to such a point that, in 1955, Mr. Talbot sued Dr. Pittman seeking to have the Court declare the boundaries to his property to be the edge of the river all the way to the point of beginning as outlined in the survey in 1919. The District Court decided in favor of Mr. Talbot. However, on appeal, the first circuit reversed and remanded the case on the grounds that the survey- or had not given the property formal notice to the property owners, and therefore, the survey, cited in the district court’s opinion as the basis for the boundaries, could not be taken into account and had to be. redone with proper notice. On remand, the Court ordered the survey but the survey was never remade and no further action ensued. By that time, the bulkheading was in progress and the dredging had been completed. The land bridge was destroyed and Dr. Pittman then only possessed to the eddy bar.
In 1960, the Pittman family moved to Covington. However, they continued to use the river residence for weekend and summer activities. They kept up the *694 property to the reduced river front left by the dredging. In 1980, the residence burned and the Pittman family did not have the house rebuilt. The Pittmans continue to use the property occasionally, but are not maintaining the grounds to the degree that they used to before the fire.
The Court finds that the Pittmans do not hold title good against the world to the bulkheaded point. That title resides in Tulane University’s property description which has always recited the banks of the river as the boundary ...”
We hold that the trial court was correct in the above holding and adopt the trial judge’s findings of fact and written reasons. The above findings and reasons also convince us that the post trial pleas of prescription filed by the Pittmans in the trial court and filed in this court should be dismissed.
The trial court also held as follows: (1) that Pittmans and their ancestors in title from 1943 to the present have exercised sufficient acts of actual and constructive possession to the present river bank boundary of their property to have acquired any land between the pine tree marker and the banks of the river by acquisitive prescription sufficient to make them riparian landowners; (2) that a sand bar forming on the banks of the Tulane property running toward the banks of the Pittman access and directly in front of it should be apportioned on a frontage to frontage method between the parties; and (3) that each of the parties should bear the fees of their respective experts and costs.
Riparian Rights. The trial court decreed the Pittmans to be the owners of the alluvion which had built up on their property. His adjudication of this issue was unnecessary, since no claim to the alluvion was before the court. The trial judge’s ruling was also unnecessary because what he intended to grant to the Pittmans is already theirs by law. La.Civ.Code art. 499 dictates the ownership of alluvion stating, in pertinent part:
Accretion formed successively and imperceptibly on the bank of a river or stream, whether navigable or not, is called allu-vion. The alluvion belongs to the owner of the bank, who is bound to leave public that portion of the bank which is required for the public use.
Because the issue of ownership of allu-vion was not before the court and because such a ruling was unnecessary, we will amend the trial court’s judgment to strike that portion which deals with ownership of the alluvion which built up on the Pittmans’ property.
Sand Bar. The trial court should not have apportioned ownership of the sand bar. This was premature. In the first place, the sand bar is building onto the bulkhead point, which is Tulane’s property. Second, the sand bar has not extended sufficiently as to presently cause a serious problem to the Pittman’s access to the river. It may do so in the future, and, at that time, the Pittmans may have other remedies under the law granting some type of relief. Third, there is some question as to whether the sand bar is even susceptible to private ownership. There is some evidence that it is still a part of the bed of a navigable stream and, therefore, not susceptible to private ownership.
The judgment of the trial court will also be amended to delete any determination of ownership of the sand bar.
Costs. The trial judge held that each of the parties should bear the fees of their respective experts and costs.
The trial judge has wide discretion and may assess the costs of suit in a manner which he deems is equitable, and his assessment can only be reversed by an appellate court upon showing an abuse of discretion. Purcell v. State Farm Insurance Company, 417 So.2d 16 (La.App. 4th Cir.1982).
In this case, the trial court stated that, due to the nature of the case, he was assessing costs as he did. Based on an examination of the record, we find no abuse of discretion in that ruling.
For the foregoing reasons that part of the judgment of the trial court is affirmed *695 dismissing any claims by plaintiff to the following described property:
ALL THAT CERTAIN TRACT OR PORTION OF LAND, together with all the buildings and improvements thereon, and all the rights, ways, privileges, servi-tudes, appurtenances and advantages thereunto belonging or in anywise appertaining, lying and being located in Section 42, Township 7 South, Range 11 East, St. Tammany Parish, Louisiana, and being more particularly described as follows, to-wit:
From the comer common to Sections 42 and 48, Township 7 South, Range 11 East, St. Tammany Parish, Louisiana, go North 65 degrees 25 minutes East 1183.0 feet; thence North 68 degrees 07 minutes West 23.5 feet to the POINT OF BEGINNING.
From the POINT OF BEGINNING go North 26 degrees 33 minutes East 870.5 feet; thence go North 75 degrees 30 minutes West 1122.8 feet and set a point on the left descending bank of the Bogue Falaya River. Thence recommence at the POINT OF BEGINNING and go North 67 degrees 59 minutes West 499.1 feet to an old pine tree; thence continue North 67 degrees 59 minutes West 64.7 feet to the bank of an inlet off the Bogue Falaya River; thence with the bank of said inlet in a northwesterly then southwesterly direction to the Bogue Falaya River; thence northerly up the left descending bank of the Bogue Falaya River to the point heretofore set.
All as shown by map or plat of survey by Jeron R. Fitzmorris dated May 24, 1983, a copy of which is annexed hereto.
That part of the judgment of the trial court dealing with the assessment of costs is also affirmed.
The judgment of the trial court is amended to delete the following from the judgment:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, Beverly Ann Norton, wife of/and Marcus L. Pittman, Jr., and against defendants, The Administrators of the Tulane Educational Fund, a/k/a Tulane University, decreeing Beverly Ann Norton, wife of/and Marcus L. Pittman, Jr., be riparian owners by virtue of acquisitive prescription of all the property lying South of the following described fence line: From the corner common to Sections 42 and 48, Township 7 South, Range 11 East on the left bank of the Bogue Falaya River, St. Tammany Parish, Louisiana, go North 65 degrees 25 minutes East 1183.0 feet; thence North 68 degrees 07 minutes West 23.5 feet to a comer on the West line of the right-of-way of Riverside Drive and the Point of Beginning of the fence line herein referred to:
From the said Point of Beginning go South 67 degrees 59 minutes East 499.1 feet to a pine tree; thence continue South 67 degrees 59 minutes East 39.7 feet to an iron corner; thence continue 67 degrees 59 minutes East 25 feet more or less to the bank of an inlet off the Bogue Falaya River.
Beverly Ann Norton, wife of/and Marcus L. Pittman, Jr. are recognized as the riparian owners by virtue of acquisitive prescription of all of the property bounded on the North by the fence line herein-above referred to and on the West by the banks of the Bogue Falaya River.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs, Beverly Ann Norton, wife of/and Marcus L. Pittman, Jr., and the defendants, The Administrators of the Tulane Educational Fund, a/k/a Tulane University, are each entitled to ownership of the accretion formed by the point sand bar on the end of the point of the Tulane property and any accretions between said sand bar and the Pittman and Tulane properties in proportion to the frontage of each property, apportioned in accordance with the frontage to frontage method dictated by Louisiana Civil Code Article 501.
The pleas of prescription filed after the trial in the trial court and in this court by the appellees are dismissed.
Costs of this appeal are assessed to ap-pellees.
*696 AFFIRMED IN PART, AMENDED IN PART.